## SOUTHERN RAILWAY CO. IN MISSISSIPPI *v.* BUCKEYE COTTON OIL CO.

[89 South. 228, No. 21862.]

1. CARRIERS. *Neither estoppel, ignorance, nor mistake can defeat Interstate Commerce Act and State Railroad Supervision Act as to discrimination and preferences; demurrage charges collected in excess of published tariffs may be recovered by shipper.*

    A strict adherence to the published rates and charges, including demurrage charges, by railroad common carriers, is essential to

avoid discriminations and preferences between shippers, and neither estoppel, ignorance of the shipper, nor mistake of the carrier's agent can defeat the provisions of the Interstate Commerce Act and the Railroad Supervision Act of this state prohibiting discriminations, and requiring that the shipper must pay and the carrier must collect only the legal published rate; therefore where a railroad carrier as a part of interstate as well as intrastate commerce has collected demurrage charges from a shipper in excess of that authorized by its published tariffs on file with the Interstate Commerce Commission and the State Railroad Commission, such excess demurrage charges so collected may be recovered from the carrier by the shipper.

2. Discovery. *Discovery may be had against corporation without joining officer thereof.*

The equitable principle that discovery cannot be had against a corporation without joining as codefendant with such corporation the secretary or some other officer thereof, for the reason that a corporation cannot make an answer under oath, nor be liable for perjury, has no application in this state since the reason on which said principle is based was abrogated by our statute (section 585, Code of 1906; section 345, Hemingway's Code), providing, among other things, that the answer of a corporation shall not be under seal, but shall be sworn to by some general officer of the corporation; for under the statute an officer answering for his corporation would subject himself to a prosecution for perjury for making a false oath.

3. Discovery. *Bill against railroad common carrier held not demurrable as seeking discovery of published tariffs.*

A bill in equity by a shipper against a railroad common carrier, alleging that during a certain period named in the bill the shipper paid the carrier a sum of money as demurrage charges, which had been, collected by the carrier from the shipper in pursuance of the former's published tariffs on file with the Interstate Commerce Commission and the State Railroad Commission and the average agreement made between the parties in pursuance of the authority in such tariffs; that such demurrage charges were collected in violation of such tariffs and average agreement, in that the carrier collected demurrage charges on cars consigned to the shipper before such cars reached the line of railroad of the carrier, as well as other violations of such tariffs and agreements; that the shipper failed to keep a correct record of such demurrage charges so paid, and what records it had kept had been lost or destroyed; that the carrier had in its possession a complete record, giving a history

of each item of such demurrage charges paid; and praying a judgment for such overpaid charges and discovery by the carrier of such records· kept by it—on demurrer is not subject to the objection that it seeks discovery of the published tariffs of the carrier on file with the Interstate Commerce Commission and the State Railroad Commission; the discovery feature of the bill being to have the carrier discover the facts and circumstances attending the collecticı of each item of demurrage charged, so that it may be properly determined whether the same had been legally collected or not.

4. CARRIERS.  *Discovery.  Bill for demurrage and discovery held not demurrable as failing to state cause of action.*

And such a bill on demurrer is not subject to the objection that it does not state a cause ɔf action for discovery and for the recovery of any demurrage charges paid by the shipper to the carrier in excess of those fixed by the published tariffs of the carrier on file with the Interstate Commerce Commission and the State Railroad Commission and the average agreement entered into between the shipper and the carrier by authority of such published tariffs.

APPEAL from chancery court of Leflore county.

HON. G. E. WILLIAMS, Chancellor.

Suit by the Buckeye Cotton Oil Company against the Southern Railway Company in Mississippi. From a decree overruling a demurrer to the bill defendant appeals. Affirmed and remanded.

*Gardner, McBee & Gardner,* for appellant.

The first ground of demurrer is: "Because the defendant is a corporation and the bill does not join the secretary or some other officer of the defendant company, as a codefendant." Examination of the bill, will reveal that the above ground is true in fact. We submit that it is well taken. On this ground we submit and cite: *Virginia & Alabama Mining & Mfg. Co.* v. *McHale & Co.,* 9 So. 256; 1 Pomeroy's Equity Jurisprudence, 199; note to *Terrell* v. *Southern Railway Co.,* 29; A. & V. Cases, page 908.

The second ground of the demurrer is: "Because the answer may subject the defendant to penal consequences." The certified schedules covered by the agreement in the record are the schedules of the Interstate Commerce Commission. The giving of a rebate in any guise whatever is a violation of law, and is penalized by the Federal Law. 4 Fed. Stat. Anno. (2 Ed.), page 440. Other grounds of demurrer are as follows: "Because the discovery is immaterial to the purpose of the suit; because the complainant has a plain, adequate and complete remedy at law; because the complainants are not entitled to the relief sought, or any other relief; because there is no equity on the face of the bill." By its bill filed in this cause, the appellee seeks the aid of a court of equity to recover an involuntary payment.

Prior to the adoption of the Interstate Commerce Act, it was necessary for it to allege that it did not know, but that it relied upon the statement of appellant as to the correctness of these bills presented to it, and which statements the railroad company knew to be false. In order for him to obtain the discovery prayed for, it must appear that the appellee has no knowledge of the facts.

A bill for discovery cannot be maintained where it appears that the complainant has full knowledge of matters as to which discovery is sought. *McKee* v. *Coffee,* 58 Miss. 653, 18 C. J. 1059; 14 Cyc. 313. But the appellee cannot now be heard to say that it did not know the correct amount, because it is conclusively presumed by the law to know it. All shippers or passengers are charged with notice of the schedules of rates, fares, charges and regulations duly published and on file with the Interstate Commerce Commission.

.   .   .   .   .   .   .   .   .   .   .

"A passenger's and shipper's knowledge of the scheduled rates and fares is conclusively presumed, and actual want of notice of the schedule is no defense to an action for the lawful rate." Roberts Federal Liability of Carriers, 460; *So. Ry. Co.* v. *Prescott,* 240 U. S. 632, 60 L. Ed. 836;

*L. & N. R. R. Co.* v. *Maxwell,* 237 U. S. 94, 59 L. Ed. 853.

The word "rate," as used in the Interstate Commerce Acts, means the net amount the carrier receives from the shipper and retains. *U. S.* v. *Chicago & A. Ry. Co.,* 148 Fed. 646-647.

"The provision of the Interstate Commerce Act requir-ing rates for the transportation and for the receiving, de-livering, storing or handling of property by an interstate carrier to be reasonable, and prohibiting discrimination, are sufficiently broad to cover demurrage charges." *Michie* v. *N. Y. & H. R. R. Co.,* 151 Fed. 694-695.

A strict adherence to the published rates and charges is absolutely essential to avoid discriminations and prefer-ences between shippers, neither estoppel, ignorance of the shipper or a mistake of the carrier's agent can defeat the prime purpose of the law that the shipper must pay and the carrier must collect the lawful published rate. Hence an erroneous quotation of a rate by an agent of a carrier to a prospective patron binds neither shipper nor carrier, as both are presumed in law to know the correct rate. Rob-erts Fed. Liability of Carriers, 467; *Ill. Cent. R. R. Co.* v. *Henderson Elevator Co.,* 226 U. S. 441, 57 L. Ed. 290; *Ar-mour Packing Co.* v. *United States,* 209 U. S. 57, 52 L. Ed. 681.

By reason of the decisions, we say that the allegations in the bill that the appellee did not know the facts, and has not the information, and did not keep any records, must be, in passing on this demurrer, disregarded because it cannot be heard to say that it did not know.

The bill seeks to recover back what it has paid in, but, such amount is not the measure of its recovery. If it re-covers at all, it must recover the amount paid by it as an overcharge. It will therefore follow, that it is not entitled to any discovery, and that if it has any action whatsoever, it would be in a court of law, and not in a court of equity.

In other words, we say that the only thing it can re-cover, and the only thing it can be heard to say, is that the

railroad company charged it an amount over and above its lawful rate; that it knew at the time it paid it, in legal effect, and that its action is for the overcharge, and we say that it has not stated a cause of action that would be good in a court of law, or for that matter, in any court.

*S. L. Gwin* and *B. L. Mayes,* for appellee.

On the right to recover charges which are unauthorized by or which are in violation of, the provisions of the carriers' tariffs, see *I. C. R. R. Co.* v. *Henderson Elev. Co.,* 226 U. S. 441, 57 L. Ed. 290; *Armour Packing Co.* v. *United States,* 209 U. S. 57, 52 L. Ed. 681; *Wilson* v. *Long Island R. R. Co.,* 165 N. Y. Supp. 913. The last cited case above is a demurrage case directly in point. *Southern Pac. R. Co.* v. *Frye & Bruhm* (Wash.), 143 Pac. 163; *Chesapeake & Ohio R. Co.* v. *Rogers* (W. Va.), decided Jan. 27, 1915; *Gible Bros.* v. *Barrett,* 215 Fed. 1004; *Kells Mill & Lumber Co.* v. *Penn. R. Co.,* July 22, 1916; *St. Louis & C. R. Co.* v. *Roff Oil Co.* (Texas), 128 S. W. 1194; *C. R. I. & P. R. R. Co.* v. *Lena Lbr. Co.* (Ark.), May 1, 1911, 137 S. W. 562; *Kansas City R. Co.* v. *Tonn* (Ark.), 143 S. W. 577; *Langhil* v. *Penn. R. Co.* (Penn.), 98 Atl. 873; *Coad* v. *C., St. P., M. & O. R. Co.* (Iowa), 154 N. W. 396; *M., K. & T. R. Co.* v. *New Era Mill Co.* (Kan.), 100 Pac. 273; *Blitch Co.* v. *Atlantic C. L. R. Co.* (S. C.), 69 S. E. 16; *Woverine Bros.* v. *So. Pac. R. Co.* (Mich.), July 23, 1915; *C. C. & C. R. Co.* v. *Talge Mahogany Co.* (Ind.), 112 N. E. 890; *Cent. R. Co. of N. J.* v. *Hite,* 166 Fed. 976, and same case on appeal in 171 Fed. 370.

On the right of the complainant to a discovery in this class of cases, see the leading Mississippi case, *Clark* v. *Eq. Life Ins. Co.,* 76 Miss. 23, 31, also 44 Miss. 677. As to the jurisdiction of equity, see: *Keystone Lumber Co.* v. *Y. & M. V. R. R. Co.,* 96 Miss. 116; *Baker* v. *Nichols,* 72 So. 1. The first ground of the demurrer argued by counsel for the appellant in their brief is that no officer of the

defendant railway company is joined as a defendant to the bill.

It was once the practice to join an officer of a corporation as a co-defendant with the corporation in bills seeking a discovery. The reason was, as explained by Mr. Pomroy, "a corporation cannot make answer under oath, nor be subject to perjury. 1 Pomroy on Equity, p. 265, sec. 199.

The old practice of joining an officer of the corporation in bills of discovery is now done away with by section 585 of the Code of 1906. Sec. 585. The answer of a corporation . . . shall be sworn to by its president, general manager, or superintendent or other officer. Furthermore, such a nonjoinder could not be objected to by demurrer. A plea would be necessary. See section 723, Code 1906.

The second ground of the demurrer argued by counsel for the appellant in their brief is that the answer will subject the defendant to a penalty. Counsel say that the defendant will be subject to a penalty under 4 Fed. Stat. Anno. (2 Ed.), p. 440, penalizing rebating. This suit does not involve rebating in any sense, and the federal statute cited by counsel has no application whatever to it. But aside from this, there is obviously no merit in the assignment. The only penalty suggested by counsel for the appellant is a statutory penalty, and it is only penalties created by contract that equity will not enforce.

The case of *Keystone Lumber Co.* v. *Y. & M. V. R. R. Co.*, 96 Miss. 116, 54 So. 445, involving our reciprocal demurrage statute is directly in point and conclusive. The whole of the remainder of the brief of counsel for the appellant is devoted to citing numerous cases to the effect that consignees are presumed to know, and are held to a knowledge of, the provisions of the carrier's tariff on file with the railroad commission, and to arguing from this premise that as the complainant must be held to know the provisions of the railroad company's tariff (expressed by counsel as "the correct rate"), the complainant is not entitled to a discovery.

The trouble with this argument of counsel is that it confuses the provisions of the tariff with the practice of the acts of the carrier. The complainant does not seek to discover from the defendant railroad company any information which is on file with and which it can secure from the Railroad Commissions. In so far as the tariff and its provisions are concerned, certified copies are exhibited with the bill of complaint. What the complainant desires to discover from the defendant is how much money did the railroad company collect from it for demurrage during the above stated period; how the railroad company computed the demurrage for which it collected; exactly what cars were handled for the complainant and how were they handled and so on. Let the court read from this point of view the prayer of the bill.

Let the court also bear in mind that if the shipper is presumed to know the correct rate he is presumed to know the correct rate, as stated in the tariff; and he is not presumed to know the correct charge in any given case where the facts upon which the application of the rates depend are misrepresented by the carrier, as in this case, where the carrier represented that all of the cars had been actually placed on the tracks of the mill at a stated time and that the demurrage was computed on that basis, when, as alleged in the bill, no actual placements were made, and the demurrage was assessed and collected without regard to the provisions of the tariff.

In point of fact, the whole argument of counsel for the appellant is beside the mark, and appears on its face to be unsound from the authorities cited by them arguendo.

In this class of cases, the law has an ear but for one injury: Has the correct charge been made and collected? The correct charge must be made in all cases; it makes no difference what the shipper or carrier knew, intended or agreed. The familiar doctrines of laches, waiver, estoppel, contract and agreement, negligence, etc., are wholly unavailable. See the case of *Wilson* v. *Long Island R. R. Co.,* 165 N. Y. Supp. 913, and cases first cited.

Receivers of interstate carload freight could recover improper demurrage charges from the railroad, although the payments were voluntarily made without protest, since, where charges have been duly established by rules approved by the Interstate Commerce Commission, the parties cannot change them by their agreement, mistake, or artifice and a balance unpaid or overpaid may be recovered, when it is attempted to do so. *Wilson* v. *Long Island R. R. Co. supra.*

Anderson, J., delivered the opinion of the court.

This is a bill filed in the chancery court of Leflore county by the appellee, the Buckeye Cotton Oil Company, against the appellant, the Southern Railway Company in Mississippi, to recover demurrage charges alleged by the appellee to have been wrongfully and illegally collected from it by the appellant, and seeking discovery from the appellant in aid of its suit. The bill was demurred to by the appellant and a decree rendered overruling the demurrer and granting an appeal therefrom to settle the principles of the cause.

The bill alleges, in substance, the following facts: That the appellant, the Southern Railway Company in Mississippi, is a domestic corporation, with its line of road running through this state, and engaged as a common carrier in both intrastate and interstate commerce. That the appellee, the Buckeye Cotton Oil Company, is a foreign corporation engaged in this state in the cotton oil business, owning and operating a plant in the city of Greenwood, Leflore county, known as the Greenwood Mill. That said plant consists of the usual buildings and machinery necessary to carry on the cotton oil business, and in addition numerous railroad side tracks and house tracks on the property of the appellee, which connect with the tracks of the appellant and are used by the appellee in receiving cars from the appellant, and, after loading, in shipping the same out over the appellant's line of railroad on which the plant of the appellee is situated. That on the 1st of February, 1914, the appellee and the appellant, being authorized to do so by

the published tariff schedules of the appellant filed with both the Interstate Commerce Commission and the Railroad Commission of the state entered into what is commonly known as an "Average Demurrage Agreement," by the terms of which the appellant and the appellee agreed and elected to put into force as to all shipments handled by appellant for the appellee at its said Greenwood Mill certain stipulations contained in such average agreement with reference to demurrage charges by the appellant against the appellee, the pertinent part of which average agreement is in the following language:

"When a shipper or receiver enters into the following agreement, the charge for the detention of cars, provided by section A of rule No. 7, on cars held for loading or unloading by such shipper or receiver, shall be computed on the basis of the average time of detention to all such cars released during each calendar month, such average detention to be computed as follows:

"(A) A credit of one day will be allowed for each car released within the first twenty-four hours of free time (except for a car subject to rule No. 2, section B, paragraph 5). A debit of one day will be charged for each twenty-four hours or fraction thereof that a car is detained beyond the free time. In no case shall more than one day's credit be allowed for any one car, and in no case shall more than five (5) days' credit be applied in cancellation of debits accruing on any one car. When a car has accrued five (5) debits, the charge provided for by rule No. 7 will be made for all subsequent detention, including Sundays and holidays.

"(B) At the end of the calendar month the total number of days credited will be. deducted from the total number of days debited and one dollar per day charged for the remainder. If the credits equal or exceed the debits, no. charge will be made to shippers or receivers on account of such excess or credits; nor shall the credits in excess of the debits of any one month be considered in computing the average detention for another month.

"(C) A shipper or receiver who elects to take advantage of this average agreement shall not be entitled to cancellation or refund of demurrage charges under section A, paragraph 1 and 3, and section B of rule No. 8.

"(D) A shipper or receiver who elects to take advantage of this average agreement may be required to give sufficient security to the carrier for the payment of the balances against him at the end of each month."

That during the period from February, 1914, to September, 1916, inclusive, the appellant demanded and collected of the appellee, under the authority of the said tariff schedules and average agreement, the sum of five thousand, two hundred and forty-nine dollars that during said period under the said tariff and average agreement no demurrage charges could accrue to the appellent, and none could be lawfully assessed and collected against the appellee (quoting from the bill, "unless the car or shipment was actually placed in an accessible position for loading and unloading by the consignee, or at a point previously designated by the consignor or consignee, or until the carrier had attempted to make such actual placement and was unable to do so on account of some act or neglect of the consignee, or the inability of the consignee to receive the car, and then not until the carrier's agent had given the consignee a written notice in accordance with said tariff of the cars it had been unable to deliver because of said conditions." That said demurrage charges assessed and collected by the appellant against the appellee during said entire period (quoting from the bill further), "were made without regard to the time said cars were actually placed on the complainant's private tracks for loading and unloading and without regard to the ability of the complainant's mill to receive said cars on its said tracks when offered, and without regard to whether said mill had been notified of a claim of such inability by said defendant railway company; and that said assessments and charges were unauthorized by, and were in violation of, the provisions of said company's tariff; and that in many of said bills rendered to and

paid by complainant the complainant was charged by said defendant company with demurrage on cars before such cars were received by the defendant company, and while they were still in the hands of its connecting carrier."

That the appellee had no information or record as to the number of cars so shipped, received, loaded, and unloaded at its plant, but that appellant has in its possession and under its control all such information. That during said period while appellant was collecting said demurrage charges from the appellee the latter kept no record of the movement of cars on which it was charged demurrage, or of the bills rendered it by the appellant, nor did it have any convenient method of investigating the correctness of said demurrage charges, and that all such bills presented to it by the appellant were at the time believed by the appellee to be correct and were paid. That during said period the appellant kept and now has in its possession a complete record of the facts and circumstances attending the collection of each and every bill by the appellant from the appellee for demurrage. That many of the records kept by the appellee and bills rendered it by the appellant have been lost or destroyed, and therefore the appellee is wholly unable to show even approximating the amount the appellant is due it on account of such demurrage charges so illegally paid.

The prayer of the bill is for discovery in aid of the suit and for a decree for the amount found to be due it by the appellant. In the prayer for discovery it is asked that appellant discover all records and correspondence of every kind in its possession or under its control covering the period from February 1, 1914, to September 1, 1916, inclusive, showing the history of the handling by it of each and every car in and out of appellee's mill plant, the amount of demurrage collected on each, and the ground on which it was demanded and collected.

The following questions arise on the bill and demurrer:

First. Whether under the Interstate Commerce Act and the State Railroad Supervision Act (Code 1906, sections

4826—4899) demurrage charges, illegally demanded and collected from a shipper by a carrier, may be recovered by the former from the latter. Counsel for appellant although they do not expressly concede that this question should be answered in the affirmative, have little to say about it in their brief and argument.

"A strict adherence to the published rates and charges is absolutely essential to avoid discriminations and preferences between shippers. Neither estoppel, ignorance of the shipper nor a mistake of the carrier's agent can defeat the prime purpose of the law that the shipper must pay and the carrier must collect the lawful published rate. Hence an erroneous quotation of a rate by an agent of a carrier to a prospective patron binds neither shipper nor carrier, as both are presumed in law to know the correct rate." Roberts' Federal Liabilities of Carriers, vol. 1, section 263, pp. 466, 467.

The acceptance by the carrier of a greater or less amount than the lawful rate is made unlawful by the Commerce Act as well as our Railroad Supervision Act; and, if the amount accepted is less than the lawful rate, the carrier may sue for and recover from the shipper the deficit, and, if it is more, the shipper may recover from the carrier the excess above the lawful rate. Roberts' Federal Liabilities of Carriers, vol. 1, section 270, p. 479. Therefore whatever excess, if any, above the lawful demurrage charges, appellant collected from the appellee, the latter has the right to recover back, and regardless of whether they were collected with the intent to violate the law, or through mere error.

Second. Whether the bill can be maintained in view of the fact that no officer of the appellant corporation was joined with it as a codefendant. It is contended on behalf of appellant that it cannot. To sustain this contention Pomeroy's Equity Jurisprudence (4 Ed.), vol. 1, section 199, is cited as authority. The text of Pomeroy referred to is in this language:

"Where it is desired to obtain discovery from a corporation in a bill filed against it for that purpose, it is firmly

settled by the authority of decided cases that a secretary or some other officer may and must be joined as a codefendant, from whom the discovery may be obtained by his answer under oath.　This exception is based wholly upon considerations of expediency, since a corporation cannot make an answer on oath, nor be liable for perjury."

Section 585, Code of 1906 (section 345, Hemingway's Code), among other things provides: "The answer of a corporation need not be under its seal, but shall be sworn to by its president, general manager, or superintendent or other general officer, unless an answer under oath shall likewise be waived."

The statute provides a method by which a corporation may answer under oath, and under it an officer answering for his corporation under oath would subject himself to prosecution for perjury for making a false oath thereto. The statute abrogates the reason of the rule as laid down by Pomeroy; it therefore follows that the rule has no application in this state.

Third. It is contended that discovery cannot be had because appellee is only seeking discovery of appellant's tariffs schedules, covering demurrage charges, on file with the Commerce Commission and the State Railroad Commission, which are public records, as much within the knowledge of appellee as appellant, and equally accessible to both.　We do not understand however, this to be the gravamen and purpose of the bill.　Discovery is sought of the facts and circumstances covering the period inquired about, to which appellant applied its demurrage tariff and average agreement, the application of which the bill charges was illegally made by appellant.　The bill seeks to discover how many cars were handled during that period on which demurrage was collected from appellee by appellant, and the facts and circumstances attending the handling of each, so that the court may be able to determine to what extent, if any, appellant collected illegal demurrage from appellee. It is alleged that the appellant kept and has a record of all these facts and circumstances, while appellee has no such

record. We are of opinion that there is no merit in this ground of objection to the bill.

Fourth. It is urged on behalf of appellant that the bill is defective because it fails to charge by proper averments that appellee in every respect complied with said published tariffs and said average agreement. We are of opinion that the bill is sufficient in that respect. It alleges that appellee paid any and all demurrage charges demanded of it by the appellant; and in paragraphs 10 and 11 it is set out wherein appellant violated the published tariffs and the average agreement; and in the conclusion of paragraph 11 it is charged that appellant collected demurrage on cars before they were ever received by appellant, and while such cars were in the hands of its connecting carriers.

We find no error in the decree of the court below.

*Affirmed and remanded.*