## LEXINGTON COMPRESS & OIL MILL CO. *v.* YAZOO & M. V. R. CO.

[95 South. 92. No. 22990.]

1. CARRIERS. *Consignee not liable for demurrage, if prevented from unloading car by failure to pay freight in excess of legal rate.*

A consignee is not liable for demurrage on a railroad car containing goods consigned to him for delay in receiving, unloading, and releasing the car, if such delay was caused by the refusal of the railroad company to permit him to unload the care until he pays freight thereon in excess of that which the company has the right to collect.

2. CARRIERS. *To charge consignee with demurrage held carrier must tender car.*

When the railroad company demands from a consignee excessive freight on a car containing goods consigned to the consignee, he is under no duty to tender to the railroad company the correct amount of freight due on the car in order to relieve himself from liability for demurrage for delay in unloading the car; but the railroad company, in order to charge the consignee with demurrage, must put him in default by tendering to him the car, either on the payment of the amount actually due it for transporting the car, or without such payment in advance, leaving the amount thereof, if in dispute, to be thereafter adjusted.

3. CARRIERS. *Consignee not relieved from liability for demurrage by failure of railroad to agree not to attempt collection of freight charges in excess of that of consignee's tender.*

Where there is a dispute between the railroad company and the consignee of a car of goods consigned to the consignee, as to the amount of freight due by the consignee thereon, and the railroad company offers to deliver the car to the consignee on payment of the amount of freight admitted by him to be due, the consignee, in order to relieve himself of liability for delay in receiving and unloading the car, must pay the freight in accordance with the company's offer and a tender thereof by him to the company conditioned upon a promise by it not to thereafter attempt to collect from him any additional freight will not relieve him from liability for demurrage in event the company declines to make the promise and he, for that reason, declines to receive and unload the car.

4. Carriers.    *Agreement to vary from freight charges approved by interstate commerce void.*

A railroad company is charged by law with collecting the freight charges contained in its tariffs filed with, and approved by, the Interstate Commerce Commission and any agreement by it to vary therefrom is void.

Appeal from circuit court of Holmes county.
Hon. S. F. Davis, Judge.

Action by the Yazoo & Mississippi Valley Railroad Company against the Lexington Compress & Oil Mill Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*Ruff & Johnson,* for appellant.

*Clinton H. McKay,* and *Burch, Minor & McKay,* for appellee.

Smith, C. J., delivered the opinion of the court.

This action was brought in the circuit court of Holmes county at the February term, 1920, to recover demurrage charges in the sum of two hundred and ten dollars, with interest from August 25, 1917, alleged to have accrued on an interstate shipment of crude oil, shipped by the Sinclair Refining Company from Vinita, Okla., in its own privately owned tank car (S. D. R. X. 2190), consigned to its own order, at Lexington, Miss., notify Lexington Compress & Oil Mill Company. The original bill of lading was attached

to a draft drawn by the shipper on the defendant, and sent through the banks in the customary way for collection.

The purchase price of the oil was six hundred twenty-six dollars and fifty-five cents, delivered to the compress company at Lexington, Miss. The freight which the railroad company was authorized to collect under its and its connecting carriers' published tariffs was three hundred thirteen dollars and twelve cents and the draft drawn by the Sinclair Refining Company on the compress company was for three hundred thirteen dollars and forty-three cents, the difference between the purchase price and the freight thereon, which freight was to be paid by the compress company on receipt of the car. The car arrived at Lexington on June 29th, and notice thereof was given by the railroad company's agent to the compress company the next day. The superintendent of the compress company thereupon called on the railroad company's agent and was advised that the freight on the car amounted to three hundred thirty-five dollars and seventy cents, to which he objected, stating that he had been advised by the shipper that the freight thereon amounted to only three hundred thirteen dollars and twelve cents. The railroad agent insisted that the amount demanded by him was correct and continued so to do during subsequent negotiations relative thereto, but on July 14th he made out a corrected freight bill on which the freight due was set forth as three hundred thirteen dollars and twelve cents. The compress company declined to pay even according to this corrected freight bill, unless the agent would guarantee that the railroad company would not make any further demand on it for the difference between the freight paid and that which was first demanded, which guarantee the agent declined to give. The freight on the car was paid in accordance with this corrected freight bill by the compress company on August 4, 1917, but it did not unload and release the car until August 25th.

According to the evidence for the compress company, the reason assigned by it for declining to receive the car on its arrival was the excessive freight demanded, and the

reason according to its testimony why it finally paid the freight without any guarantee from the railroad company that it would not demand the difference between that paid and the amount which it first demanded, was that the shipper advised it on August 3d that it would pay this difference in event the railroad company should demand and be entitled to it. The draft drawn on it for the price of the oil with bill of lading attached seems not to have been paid by the compress company until this agreement relative to the payment of the freight was made by it with the shipper. According to the evidence of the railroad company, the reason assigned by the compress company for not receiving and unloading the car of oil was that it did not then have a place in which to store it.

When the car arrived at Lexington the compress company was constructing a tank in which to store the oil, which tank was not completed until about the time it unloaded the car. Its manager and president, however, denied that that was the reason it declined to unload the car or that the railroad agent was so advised, but on the contrary an arrangement had been made with an oil mill company for the storing of the oil in one of its tanks. When the freight was finally paid on the car, the compress company, according to its evidence, was expecting its own tank to be soon ready for storing the oil, and it then preferred to pay the demurrage to thereafter accrue and not unload it until it could be stored in its own tank. The railroad company had an arrangement with the compress company by which goods consigned to the compress company would be delivered to it without the payment of the freight thereon in advance of the delivery, collections therefor being made monthly by the railroad company. The railroad agent testified that not only would he have delivered this car under that agreement without the payment of the freight thereon in advance had he been requested so to do, but that he offered so to do several times, the first being about ten days after the receipt of the car. There is no contention by the appellee that the freight demanded by its agent and which the appellant refused to pay was correct.

At the close of the evidence the court below directed a verdict for the railroad company, and there was a judgment accordingly, from which the compress company has appealed to this court.

The appellant admits liability for demurrage for the time intervening between the payment of the freight and the unloading of the car. Its contention is that, because of the demand of the railroad company for excessive freight, it had the right to and did refuse to accept the car until its dispute with the company over the freight was adjusted, because of which it is not liable for demurrage prior to the payment by it of the freight on August 4th.

The contentions of the appellee are: First, that the appellant did not refuse to receive the car because of the excessive freight demanded therefor, but because it had no place for storing the oil. Second, the demand for excessive freight did not justify the appellant in refusing the car, for under its arrangement with the appellee the car would have been delivered to it, had it so requested, without the payment of the freight thereon in advance. Third, even though the appellee had required the payment of the freight before it would deliver the car, the appellant in order to free itself from liability for demurrage should have tendered to the appellee the freight admitted by it to be due on the car. Fourth, that in any event the appellant is liable for demurrage after the appellee's agent offered to deliver the car to the appellant without the payment of the freight in advance; or, if mistaken in that, certainly after the offer of its agent to accept the amount of freight admitted by the appellant to be due.

Whether the appellant refused to receive and unload the car because of excessive freight demanded thereon or because it had no place for storing the oil was on the evidence a question for the jury.

A consignee is not liable for demurrage on a railroad car containing goods consigned to him because of a delay by him in receiving, unloading, and releasing the car, if such delay was caused by the wrongful conduct of the railroad company charged under the bill of lading with the delivery

of the car.  If the delivering company demands excessive freight on the car, the consignee is, of course, under no obligation to pay it.  And if the company refuses to deliver the car to the consignee until the excessive freight demanded by it is paid, which the consignee refuses to do, it is in no position to say that the delay in unloading the car was caused by any default on the part of the consignee. Under such circumstances, in so far as relieving himself of liability for demurrage is concerned, the consignee is under no duty to tender to the railroad company the freight which it is entitled to collect for transporting the car, but it, the railroad company, in order to charge the consignee with demurrage must put him in default by tendering to him the car either on the payment of the amount actually due it for transporting the car or without such payment in advance, leaving the amount thereof, if in dispute, to be thereafter adjusted.  By accepting the car before the dispute as to the freight thereon has been adjusted, the consignee incurs no liability, for any freight in excess of that which under its tariffs, approved by the Interstate Commerce Commission, the railroad company is authorized to charge.  *Southern Ry. Co.* v. *Buckeye Cotton Oil Co.,* 126 Miss. 562, 89 So. 228.  If the case of *Gulf City Const. Co.* v. *L. & N. R. Co.,* 121 Ala. 621, 25 So. 579, cited by counsel for the appellee, holds that a consignee from whom excessive freight charges are demanded must tender to the railroad company the correct amount thereof in order to relieve himself from liability for demurrage because of delay in unloading a car, we must decline to follow it.  That case, however, probably does not so hold.  It involved the right of a consignee to recover demurrage which he claimed to have been wrongfully coerced into paying, and the question on which the decision seems to have turned was whether or not the payment of the demurrage by the consignee was voluntary.

It follows from the foregoing views that the appellant was not in default until, but was when, the appellee's agent offered to deliver the car to it without the payment of the freight charges thereon in advance, and that it was again

in default when the appellee's agent offered to accept the amount of freight which the appellant admitted to be due.

That the appellant tendered payment of the freight admitted to be, and which in fact was, the amount due can avail it nothing, for its offer was conditioned on the appellee's agent guaranteeing that the appellee would not thereafter seek to collect the difference between the amount paid and that which its agent at first demanded. Such a guarantee had it been given would have added nothing to the appellant's rights and would have not been binding on the appellee, for the appellee is charged by law with collecting freight on goods transported by it according to the rules contained in its tariffs filed with and approved by the Interstate Commerce Commission, and any agreement by it to vary therefrom is void. *Southern Ry. Co.* v. *Buckeye Cotton Oil Co.,* 126 Miss. 562, 89 So. 228.

The appellant is not liable for demurrage for the time prior to that at which it became in default for not receiving and unloading the car as hereinbefore set forth. In other words, if the appellee's agent offered to deliver the car to the appellant without the payment of the freight thereon, the appellant was in default and liable for demurrage thereafter, but, if that offer was not in fact made, then the appellant is in default and liable for demurrage after the appellee's agent offered to accept the amount of freight admitted by the appellant to be due.

*Reversed and remanded.*