Gulf, M. & N. R. Co. v. Riverside Brick & Mfg. Co.[*]

(Division B. Jan. 25, 1926.   On Suggestion of Error, Feb. 22, 1926.)

[107 So. 193.   No. 25379.]

1. CARRIERS.   *Railroad company, making mistake in charge for shipment, may recover difference from shipper; railroad company, making mistake in charge for shipment, has option of suing either shipper or consignee, in absence of binding contract to contrary.*

   Where a shipper ships goods to a consignee over a railroad whose rates are fixed by a public body, and such rates are made obligatory upon the railroad, and a mistake is made in the rate charged for such shipments, and the shipment is delivered to the consignee before such mistake is discovered, the carrier may recover the difference in the rate paid and that required to be paid from the shipper. In such case it has the option to sue either the shipper or consignee, unless it has made a binding contract to the contrary.

   ON SUGGESTION OF ERROR.

2. CARRIERS.   *Ordinarily consignor is liable for freight charges, but agreement that consignee will be looked to for payment is permissible.*

   Although ordinarily consignor of goods has primary obligation to pay the freight charges, the parties may agree that the consignee will be looked to for payment of freight, and it is permissible to so contract.

---

*Corpus Juris Cyc. References; Carriers, 10 C. J., pp. 445, n. 15, 16, 17, 18, 19, 23; 446, n. 26; 447, n. 38; 449, n. 67, 69, New.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by the Gulf, Mobile & Northern Railroad Company against the Riverside Brick & Manufacturing Company. Judgment for defendant, and plaintiff appeals. Reversed and judgment rendered.

*T. C. Hannah* and *Jas. Simrall, Jr.,* for appellant.

There are only two questions presented by this record. The first is whether or not the terminal carrier of freight shipments can by law collect all the freight charges due on freight shipments delivered by it, including both the amounts due to it and the amounts it has paid to the carrier or carriers from whom it receives the shipment. We think to ask this question will be to answer it. Under our present transportation system, it is firmly settled, not only by law and by the decisions of the courts, but also by the course and conduct of business, that this right of the terminal carrier becomes a part of each and every contract of shipment of goods by freight. As authorities we cite: 4 Elliott on Railroads, page 593, sec. 2191; 4 R. C. L., page 900, sec. 355.

The only other question presented by this record is the right of the carrier to collect what are commonly known as "under-charges." This question naturally divides itself into two other questions. The first question is the right of the carrier to collect the under-charge at all, and the second one is the right of the carrier to collect the under-charge from the shipper of the goods. It is the general rule of law that the carriers are all bound to collect the regularly published and established charge fixed in its tariffs. This question has been presented to the supreme court of the United States in a number of cases, and the supreme court has uniformly held that, under the uniform rates provision of the Interstate Commerce Act, the carrier is bound to collect and the shipper or consignee of the freight is bound to pay the legal rate, and that no act, omission or contract of either the carrier, or the shipper or consignee can relieve any of them from this duty which the law imposes upon them. *Kansas City Ry. Co.* v. *Carl,* 227 U. S. 639, 57 L. Ed. 683. See, also, *T. & P. Ry. Co.* v. *Mugg,* 202 U. S. 242, 50 L. Ed. 1011; *Lexington Compress & Oil Mill Co.* v. *Y. & M. V. R. R. Co.,* 131 Miss. 49, 95 So. 92; and *So. Ry. Co.* v. *Buckeye Cotton Oil Co.,* 126 Miss.

562, 89 So. 228. We invite attention to sections 4842, 4843, 4848, Code of 1906 (sections 7627, 7628 and 7629, Hemingway's Code) which require all carriers to charge and collect the regularly published rates. As to the question of the right of the carrier to collect the under-charge from the shipper of the freight, see *Coal & Coke Ry. Co.* v. *Buckhannan River Coal & Coke Co.,* 87 S. E. 376, L. R. A. 1917 A. 663.

*T. J. Wills* and *A. A. Hearst,* for appellee.

The only question is whether the delivering carrier, the Gulf, Mobile and Northern Railroad, under the facts, can maintain this action against the original shipper.

In the first place, there was never any contract on the part of the shipper, to pay the freight; and, on the other hand, there was an implied contract between the shipper and the initial carrier that the freight would be collected on delivery and this released the shipper from any liability if any had ever existed. Not only this, but the delivering carrier, recognizing its duty under contract, to collect the freight from the consignee, undertook and tried faithfully to perform this duty by having its agent at destination calculate the amount of freight, and the amount calculated by him was paid by the consignees. We insist that this was a full release of the shipper for all liability for the freight if, in fact, there had ever been any liability.

Both the statutes of the state and acts of the interstate commerce commission fix the rate to be charged and in no wise undertake to provide who shall be liable for same and the law in this respect is left entirely to the contract and conduct of the parties as any other matter is. Inasmuch, therefore, as it was contracted and agreed in this case, the freight should be collected from the consignees, the delivering carrier cannot now hold the original shipper for an under-charge and this is especially true since it is not shown in the record that any effort has been made to collect from the consignees. *L. & N.*

*R. Co.* v. *Central Iron & Coal Co.,* 44 Sup. Ct. Rep. 441, controls.

ETHRIDGE, J., delivered the opinion of the court.

The appellant brought suit against appellee for freight charges on certain shipments of brick from the plant of appellee to points on appellant's line of railroad. There was an error in the amount charged for freight on the said shipments, and suit was brought for the difference between the proper rate and the amount actually paid.

During 1921 the appellee shipped certain cars of brick from its plant to its customers at Lucedale and Richton, Miss. The appellant collected from the consignees what was supposed to be the freight rates according to the amount indicated on the waybill. Afterwards it was discovered that the rates were incorrect, and the appellant made demand on the shipper, the appellee, for the difference, which it refused to pay, contending that it was not liable, but that the consignees of said shipment should pay such rates. The case was tried upon an agreed statement of facts, in which it was admitted that the amounts demanded were correct as to the amount of proper charge, but it was not agreed as to who was liable. The appellant contended that the shipper was liable, while the appellee contended that the appellant should sue the consignees. The court below held in favor of the shipper, holding that it was not liable under the facts above stated, but that the appellant should have sued the consignees.

It is settled that, where errors are made in rates of freight that the company may and must demand of the shipper, the true rates properly fixed by the rate-making bodies—the interstate commerce commission in case of interstate rates, and the state railroad commission in case of intrastate rates. See *Kansas City Southern Railway Co.* v. *Carl,* 227 U. S. 639, 33 S. Ct. 391, 57 L. Ed. 683; *Texas & Pacific Railway Co.* v. *Mugg,* 202 U. S. 242, 26 S. Ct. 628, 50 L. Ed. 1011; *Lexington Compress & Oil*

*Mill Co.* v. *Yazoo & Mississippi Valley Railroad Co.*, 131 Miss. 49, 95, So. 92; *Southern Railway Co.* v. *Buckeye Cotton Oil Co.*, 126 Miss. 562, 89 So. 228.

We are of the opinion that the railroad company may collect from the shipper in such cases, unless there is an agreement between the railroad company and the shipper that the company must collect from the consignee. In *Coal & Coke Railway Co.* v. *Buckhannon River Coal & Coke Co.*, 77 W. Va. 309, 87 S. E. 376, L. R. A. 1917A, 663, it was held that a consignor who signs the bill of lading on his own account, and not as agent for the consignee, is liable to the carrier for the freight, although title to the goods passed to the consignee on delivery to the carrier. In the course of the opinion the court said:

"Counsel contends that the words 'owner' and 'consignee' are synonymous terms, and refer to the consignee, who is generally also the owner. We do not think it necessary to construe those terms, for, if it be granted that the construction contended for is correct, it was not the purpose of that section to relieve the consignor from liability on his contract. The bill of lading, together with the tariff schedule approved by the Interstate Commerce Commission, constitutes the contract, which was executed by defendant on its own account. It does not purport to be made by defendant as agent for the consignee. That section does not constitute the bill of lading a special contract, relieving the shipper who signed it from liability for the freight charges. It was inserted for the carrier's benefit, and is intended as notice to shippers of the carrier's legal rights. Regardless of that clause, the consignee, if owner, is bound, by accepting the goods, to do all that clause requires him to do. But the carrier's right to collect from the consignee does not imply a release of the consignor, in the absence of a special contract exonerating him. The carrier may collect from either. Nor did the carrier's waiver of its lien by delivery before payment of the freight release the consignor, there being no special contract. *Wooster* v. *Tarr*, 8 Allen (Mass.) 270, 85 Am. Dec. 707; 2 Hutch. Carriers, sec-

tion 810. Both consignor and consignee were bound to plaintiff for the freight, the former on its express contract, and the latter on its promise implied by its ownership and acceptance of the coal.''

The section referred to in the foregoing quotation was the section of printed conditions on the back of the bill of lading, which provided that:

''The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped.''

See, also, cases in case note and the L. R. A. report in this case, beginning at page 665, volume 1917A.

Therefore the judgment of the court below will be reversed, and judgment rendered here for the amount sued for, with interest from date of filing suit.

*Reversed, and judgment here.*

## On Suggestion of Error.

It is suggested in the suggestion of error that the decision in this case should be controlled by that of the supreme court of the United States, construing a similar contract, in the case of *Louisville & Nashville Railroad Co.* v. *Central Iron & Coal Co.*, reported in 44 S. Ct. 441, 265 U. S. 59, 68 L. Ed. 900. We do not understand that there is any conflict between the decision in this case heretofore rendered by this court and the decision in that of *L. & N. Railroad Co.* v. *Coal Co., supra.* In that case the Central Iron & Coal Company sold to Tutwiler & Brooks ten carloads of coke, to be delivered f. o. b. cars at the seller's plant in Holt, Ala. Before delivery by the seller, the purchaser sold to the Great Western Smelters Corporation of Mayer, Ariz. Thereafter, under instructions from Tutwiler & Brooks, and upon their agreement to pay the freight, the Central Iron & Coal Company delivered at its plant the cars of coke to the

Louisville & Nashville Railroad Company, directed the shipment thereof to Mayer, Ariz., over that railroad, and its connecting lines, and took bills of lading, which it delivered immediately to Tutwiler & Brooks. It will be noted that Tutwiler & Brooks agreed to pay the freight, and that the shipment was made for them as owners, instead of on behalf of the Central Iron & Coal Company. In the course of its opinion the supreme court of the United States (44 S. Ct. 443, 265 U. S. at page 67, 68 L. Ed. 903) said:

"To ascertain what contract was entered into, we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract. Ordinarily the person from whom the goods are received for shipment assumes the obligation to pay the freight charges, and his obligation is ordinarily a primary one. This is true, even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor, the transportation ordered by him is presumably on his own behalf, and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended, not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability. In this case the bills of lading acknowledge receipt of the coke from the Central Company. But it did not sign them. Nor was it described therein as the consignor. There was no clause by which the shipper agrees expressly either to pay the freight charges or to guarantee their payment."

In the case before us the shipper was the consignor, and made the contract with the carrier, "which was

agreed to by the shipper and accepted for himself and his assigns.''

Of course, the parties may agree that the consignee will be looked to for payment of the freight, and it is permissible so to contract. We did not hold that such contract could not be made, but that in the case before us the railroad company had the right to look to the consignor.

The suggestion of error will be overruled.

*Overruled.*