## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* CENTRAL IRON & COAL COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 198.   Argued February 19, 1924.—Decided May 5, 1924.

1. No contract of a carrier can reduce the amount of charges legally payable to it under its tariff for an interstate shipment, or release from liability a shipper who has assumed their payment; nor can any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by the person liable.   P. 65.
2. But, in the absence of a governing tariff provision, delivery of the goods for shipment does not necessarily import an obligation of the shipper to pay the freight charges, and the carrier and shipper are free to contract as to when and by whom payment shall be made, subject to the rule against discrimination.   P. 66.
3. Where bills of lading acknowledged receipt of goods from the shipper but provided for delivery to the order of another as consignee, were not signed by the shipper, and contained no express agreement on his part to pay or guarantee payment of the freight charges, and there was evidence that the goods were sold and shipped by the shipper to the consignee upon agreement between them that the latter should pay those charges, and were transferred by the consignee with the bills of lading to a third party who received delivery from the carrier, *held*, that a finding that the

shipper did not assume the primary obligation to pay the freight charges was justified. P. 67.

4. To enforce payment of freight charges by a shipper only secondarily liable, the carrier must first make effort to collect from those primarily liable. P. 69.

5. A consignee, by accepting the shipment, becomes liable as a matter of law for the full amount of the tariff charges, whether they are demanded at the time of delivery or later. *Pittsburgh, etc. Ry. Co.* v. *Fink,* 250 U. S. 577. P. 70.

284 Fed. 250, affirmed.

ERROR to a judgment of the Circuit Court of Appeals, affirming a judgment by the District Court for the defendant Coal Company in an action by the railroad to recover the difference between the amount chargeable under its tariff for an interstate shipment and a less amount collected.

*Mr. Homer W. Davis,* with whom *Mr. Gardiner Lathrop* and *Mr. Edward S. Jouett* were on the briefs, for plaintiff in error.

Prior to the passage of the Interstate Commerce Act, it was uniformly held that the shipment of goods under a bill of lading containing no express provision requiring payment of freight by the consignor, impliedly bound him so to do, irrespective of whether or not he was the owner of the goods shipped. *Wooster* v. *Tarr,* 8 Allen, 270; *Blanchard* v. *Page,* 8 Gray, 281; *Holt* v. *Westcott,* 43 Me. 445; *Portland Flouring Mills Co.* v. *British & Foreign Marine Ins. Co.,* 130 Fed. 860; Hutchinson, Carriers, 3d ed., § 810; 7 Amer. & Eng. Enc. L., 2d ed., p. 260; Elliott, Railroads, § 1659.

The reasons which obtained prior to the Interstate Commerce Act for holding a shipper primarily liable were augmented by its passage. In this case the consignor is liable under the admitted facts. *Pittsburgh, etc. Ry. Co.* v. *Fink,* 250 U. S. 577; *New York Central, etc. R. R. Co.* v. *York & Whitney Co.,* 230 Mass. 206; s. c., 256 U. S.

406. Although these decisions relate only to the consignee's liability, their reasoning applies to this case, and they plainly show that instances of occasional hardship must not be allowed to stand in the way of the collection of tariff rates and the enforcement of the provisions of the Interstate Commerce Act, which has for its object the abolition of the numerous abuses which existed before it was enacted.

Only a nominal hardship is imposed on a consignor by holding him liable for an undercharge when the consignee is solvent.

It seems pertinent to observe that if, as claimed by the consignor and found by the courts below, the ultimate consignee was solvent up to the time suit was brought, then any hardship which either consignor or the bill of lading consignee would suffer, should the consignor by the judgment of this Court be now held liable, is the result of the course pursued by the consignor in this case.

It is undisputed that demand was made on the consignor before suit was brought and that the consignor had a contract for the sale of the coke f. o. b. Holt, Alabama, to the firm of Tutwiler & Brooks of Birmingham, Alabama, the bill of lading consignee.

Instead of paying the undercharge and making collection from either Tutwiler & Brooks or the Smelter Corporation, the consignor, so far as the record shows, did nothing before, or for over fifteen months after, the suit was brought, when it filed a demurrer to the complaint.

If, as testified, the Smelter Corporation was solvent up to January, 1920, and for three months thereafter, and during that time could have been forced to pay the amount due on execution, there is no reason why the consignor and Tutwiler & Brooks could not have made collection during that period from the Smelter Corporation, since the purchase of goods f. o. b. a given point with directions to the consignor to ship to some other point, and the payment of

the purchase price, unquestionably binds the purchaser to see that the consignor or the party from whom the goods are purchased is not thereafter held liable for the freight charges.

Neither estoppel nor election can become the means of avoiding payment of tariff rates. *Pittsburgh, etc., Ry. Co. v. Fink,* 250 U. S. 577.

No reason is given by the court below in explanation of its position that, while by conduct a carrier could not raise an estoppel which would release a consignor, yet by the same kind of conduct it could make an election which would have that effect.

It has frequently been held that the doctrine of election of remedies is simply an application of the law of estoppel. *Crockett First National Bank* v. *Barse Live Stock Commission Co.,* 198 Ill. 232; *Baker* v. *Edwards,* 176 N. C. 229; *Warriner* v. *Fant,* 114 Miss. 174; *Bierce, Ltd.* v. *Hutchins,* 205 U. S. 340.

Certainly, any election must arise out of some act of the party who has the choice of remedies, and not out of an act or change in the financial responsibility of someone else, and in either of those cases the only act of the Railroad Company would be to collect part of the charges upon delivery at destination.

Furthermore, election applies in the case of inconsistent and not alternative remedies. *Friederichsen* v. *Renard,* 247 U. S. 207. In the case of consignor and consignee, it would not be inconsistent to sue both of them at the same time for freight charges, although recovery from either would bar the suit against the other. The rights of the carrier to hold either or both are alternative or cumulative. *Central R. R. Co.* v. *MacCartney,* 68 N. J. L. 165. *Yazoo & Mississippi Valley R. Co.* v. *Zemurray,* 238 Fed. 789, distinguished.

The Interstate Commerce Commission and numerous courts have passed on the question involved in this case

in the light of the Interstate Commerce Act, and almost without exception hold that the consignor must pay if the consignee does not. *Great Northern Ry. Co.* v. *Hyder,* 279 Fed. 783; *New York Central R. R. Co.* v. *Federal Sugar Refining Co.,* 235 N. Y. 182; *Cleveland, etc. Ry. Co.* v. *Southern Coal & Coke Co.,* 147 Tenn. 433; *New York, etc. R. R. Co.* v. *Tonella,* 79 N. H. 464; *Wells Fargo & Co.* v. *Cuneo,* 241 Fed. 727; *Boise Commercial Club* v. *Adams Express Co.,* 17 I. C. C. 115; *Boston & Maine R. R.* v. *National Orange Co.,* 232 Mass. 351; *Great Northern Ry. Co.* v. *Hocking Valley Fire Clay Co.,* 166 Wis. 465; *Chicago, etc. Ry. Co.* v. *Peterson,* 168 Wis. 193; *Baltimore & Ohio S. W. Ry. Co.* v. *New Albany Box & Basket Co.,* 48 Ind. App. 647; *Atchison, T. & S. F. Ry. Co.* v. *Stannard & Co.,* 99 Kans. 720; *Jelks* v. *Philadelphia & Reading Ry. Co.,* 14 Ga. App. 96.

It is true that, in practically all of the above cases, there was no dispute but that the consignee was insolvent, because it is not the practice to collect undercharges from consignors when there is any reasonable prospect of making collection from the consignee.

But all the cases referred to were decided on the ground that there was, and must be, to enforce the Interstate Commerce Act, an absolute liability on the part of the consignor to pay if the consignee does not.

The consignee was not solvent when this suit was brought, except in the sense that one may be said to be solvent until adjudged otherwise.

*Mr. Henry A. Jones,* with whom *Mr. Allan C. Rearick, Mr. A. C. Travis, Mr. De Vane K. Jones* and *Mr. Adrian Van de Graaff* were on the briefs, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

In January, 1917, the Central Iron & Coal Company sold Tutwiler & Brooks ten carloads of coke to be deliv-

ered f. o. b. cars at the seller's plant in Holt, Alabama. Before delivery by the seller, the purchasers sold the coke to the Great Western Smelters Corporation of Mayer, Arizona. Thereafter, under instructions from Tutwiler & Brooks, and upon their agreement to pay the freight, the Central Company delivered, at its plant, the cars of coke to the Louisville and Nashville Railroad; directed shipment thereof to Mayer over that railroad and connecting lines; and took bills of lading which it delivered immediately to Tutwiler & Brooks. That firm made a draft for the purchase price on the Smelters Corporation, with bills of lading attached. The corporation paid the draft; received the bills of lading; and, upon surrendering them to the delivering carrier and payment to it of the freight demanded, obtained possession of the coke. The amount of the freight then demanded and paid was $5,082.15. The freight legally payable, according to the tariff, was $8,545.61.

The undercharge was apparently not discovered until January, 1920. The Louisville and Nashville then made demand upon the Central Company for the amount ($3,463.46). Payment being refused, this action to recover it was brought in the federal court for the Northern District of Alabama, Western Division. Each party requested a directed verdict. It was directed for the defendant; judgment entered thereon was affirmed by the Circuit Court of Appeals, 284 Fed. 250; and the case is here on writ of error under § 241 of the Judicial Code. Most of the facts were agreed. The bills of lading acknowledged receipt of the coke from the Central Company; stated that the coke was " consigned to Order Of Tutwiler & Brooks, Destination Mayer, Arizona, . . . Notify Great Western Smelters Corporation "; and provided, among other so-called conditions, that " The owner or consignee shall pay the freight, and average, if any, . . . and, if required, shall pay the same before

delivery." [1]   There was no suggestion that Tutwiler &
Brooks were insolvent.   Whether collection could then
have been made from the Smelters Corporation is a
matter as to which there was conflicting evidence. [2]

The shipment being an interstate one, the freight rate
was that stated in the tariff filed with the Interstate
Commerce Commission.   The amount of the freight
charges legally payable was determined by applying this
tariff rate to the actual weight.   Thus, they were fixed by
law.   No contract of the carrier could reduce the amount
legally payable; or release from liability a shipper who
had assumed an obligation to pay the charges.   Nor could
any act or omission of the carrier (except the running of
the statute of limitations) estop or preclude it from en-
forcing payment of the full amount by a person liable
therefor.   *Pittsburgh, Cincinnati, Chicago & St. Louis
Ry. Co.* v. *Fink,* 250 U. S. 577; *New York Central, etc.
R. R. Co.* v. *York & Whitney Co.,* 256 U. S. 406.   Com-
pare *St. Louis Southwestern Ry. Co.* v. *Spring River
Stone Co.,* 236 U. S. 718.   But delivery of goods to a
carrier for shipment does not, under the Interstate Com-

---

[1] The bills of lading also contained these clauses: "If charges are
to be prepaid, write or stamp here.   Received $.......... to apply
in prepayment of..........   To be prepaid........" The blanks
were not filled by writing or stamp.   The form of bills of lading used
was what is known as the standard form order bill of lading.   But
the goods shipped were made deliverable to the order of a named
consignee.   Compare *Pere Marquette Ry. Co.* v. *French & Co.,* 254
U. S. 538, 539, 540.

[2] The corporation was not then technically insolvent.   That is, no
proceeding in bankruptcy had been instituted by or against it; there
was no outstanding unsatisfied execution; and the corporation was
still in possession of some unencumbered property.   If the error had
been discovered within a few months after delivery of the coke, the
delivering carrier might easily have obtained payment of the amount
of the undercharge by applying to that purpose funds of the Smelters
Corporation then on deposit with it.

merce Act, impose upon a shipper an absolute obligation
to pay the freight charges.[3]   The tariff did not provide
when or by whom the payment should be made.  As to
these matters carrier and shipper were left free to con-
tract, subject to the rule which prohibits discrimination.[4]
The carrier was at liberty to require prepayment of
freight charges; or to permit that payment to be deferred
until the goods reached the end of the transportation.
*Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, 656.
Where payment is so deferred, the carrier may require
that it be made before delivery of the goods; or concur-
rently with the delivery; or may permit it to be made
later.   Where the payment is deferred, the contract may
provide that the shipper agrees absolutely to pay the
charges; or it may provide merely that he shall pay if the

---

[3] See Interstate Commerce Commission Conference Ruling No. 314,
Bulletin No. 7, issued August 1, 1917: " The law requires the carrier
to collect and the party legally responsible to pay the lawfully
established rates without deviation therefrom.  It follows that it is
the duty of carriers to exhaust their legal remedies in order to collect
undercharges from the party or parties legally responsible therefor.
It is not for the Commission, however, to determine in any case which
party, consignor or consignee, is legally liable for the undercharge,
that being a question determinable only by a court having jurisdiction
and upon the facts of each case."  This ruling, which was adopted
May 1, 1911, and "interpreted" May 4, 1918, was amended, on
March 6, 1922, by calling attention to the provision inserted in the
Uniform Domestic Bill of Lading prescribed October 21, 1921.  By
that provision the consignor may (see Section 7 of Conditions and
clause on face of bill) relieve himself of all liability for freight
charges. *In the Matter of Bills of Lading,* 52 I. C. C. 671, 721; 64
I. C. C. 347; *ibid,* 357; 66 I. C. C. 63.

[4] But see § 3 of the Interstate Commerce Act, as amended Feb-
ruary 28, 1920, c. 91, § 405, 41 Stat. 456, 479. *In re Section
3, etc., (Regulations for Payment of Rates and Charges)* 57
I. C. C. 591.

Compare *Hocking Valley Ry. Co.* v. *United States,* 210 Fed. 735,
741; *Boise Commercial Club* v. *Adams Express Co.,* 17 I. C. C.
115, 121.

consignee does not pay the charges demanded upon delivery of the goods. Or the carrier may accept the goods for shipment solely on account of the consignee; and, knowing that the shipper is acting merely as agent for the consignee, may contract that only the latter shall be liable for the freight·charges. Or both the·shipper and the consignee may be made liable. Nor does delivery of goods to a carrier necessarily import, under the general law, an absolute promise by the shipper to pay the freight charges. We must, therefore, determine what promise, if any, to pay freight charges was, in fact, made by the Central Company.

To ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract.[5] Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever

[5] *Pollard* v. *Vinton,* 105 U. S. 7, 8; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Knight,* 122 U. S. 79, 87; *In the Matter of Bills of Lading,* 52 I. C. C. 671, 681. Compare *Mobile & Montgomery Ry. Co.* v. *Jurey,* 111 U. S. 584.

therefor; [6] or that he should assume only a secondary liability. In this case, the bills of lading acknowledge receipt of the coke from the Central Company. But it did not sign them. Nor was it described therein as the consignor. There was no clause by which the shipper agrees expressly either to pay the freight charges or to guarantee their payment. The goods received were not declared to be deliverable to the Central Company's order. On the contrary, the form of the bills of lading indicated that it was neither the owner nor the person on whose behalf the shipment was being made; and that Tutwiler & Brooks were either the owners or the persons in whose behalf the shipment was being made. On these facts, the trial court was justified in finding that the Central Company did not assume the primary obligation to pay the freight charges.[7]

[6] *Union Freight R. R. Co.* v. *Winkley,* 159 Mass. 133; *Thomas* v. *Snyder,* 39 Pa. St. 317, 322; *Wayland's Adm'r.* v. *Mosely,* 5 Ala. 430; *Chicago, Rock Island & Gulf Ry. Co.* v. *Floyd,* 161 S. W. (Tex. Civ. App.) 954. See *Barker* v. *Havens,* 17 Johns. 234, 237; *Grant* v. *Wood,* 21 N. J. L. 292, 300. Compare *Cincinnati, N. O. & T. P. Ry. Co.* v. *Vredenburgh Saw Mill Co.,* 13 Ala. App. 442.

[7] In most of the cases in the state courts and the lower federal courts, relied upon by the carrier, either the facts on which the shipper was held liable differed materially from those of the case at bar; or because of the manner in which it was presented, the question of law was different.

In *Chicago, Indianapolis & Louisville Ry. Co.* v. *Peterson,* 168 Wis. 193, the bill of lading contained an express agreement that the charges were guaranteed by the shipper. See also *Chicago & Northwestern Ry. Co.* v. *Queenan,* 102 Neb. 391, 393, 398. In *New York Central R. R. Co.* v. *Federal Sugar Refining Co.,* 235 N. Y. 182; *New York Central R. R. Co.* v. *Philadelphia & Reading Coal & Iron Co.,* 286 Ill. 267; and *Portland Flouring Mills Co.* v. *British & Foreign Marine Ins. Co.,* 130 Fed. 860, the goods were deliverable to the shipper's order. In *New York, New Haven, & Hartford R. R. Co.* v. *Tonella,* 79 N. H. 464, the goods were deliverable to a named consignee, but the shipper was described as consignor and owner. In *Coal & Coke Ry. Co.* v. *Buckhannon River Coal & Coke Co.,* 77

It is urged that, if the Central Company was not under a primary obligation to pay the freight charges, it was secondarily liable, because collection from the Smelters Corporation of the balance remaining due had become impossible before the undercharge was discovered. But the trial judge was not compelled so to find. There was evidence that such collection had not become impossible. Confessedly no effort was made to collect from it. Nor was any effort made to collect from Tutwiler & Brooks. Moreover, if a secondary obligation of the Central Company was to be implied from the fact of its causing the

W. Va. 309; *Northern Pacific Ry. Co.* v. *Pleasant River Granite Co.,* 116 Me. 496, 498; *Montpelier & Wells River R. R.* v. *Bianchi & Sons,* 95 Vt. 81, the goods were deliverable to a named consignee, but the bill of lading was signed by the shipper in his own name. In *Boston & Maine R. R.* v. *National Orange Co.,* 232 Mass. 351, the goods were deliverable to a named consignee, but he was the agent of the shipper, who was also the owner. *Atlas S. S. Co.* v. *Colombian Land Co.,* 102 Fed. 358. In *Wooster* v. *Tarr,* 8 Allen, 270, and *Great Northern Ry. Co.* v. *Hocking Valley Fire Clay Co.,* 166 Wis. 465, the consignee was named, but there was not in the bill of lading (or otherwise) any indication to the carrier that the shipper was not acting on his own behalf. In *Jelks* v. *Philadelphia & Reading Ry. Co.,* 14 Ga. App. 96, the consignee was named but refused to accept the shipment. In *New York Central R. R. Co.* v. *Warren Ross Lumber Co.,* 234 N. Y. 261; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Greenberg,* 139 Minn. 428, and *Waters* v. *Pfister & Vogel Leather Co.,* 176 Wis. 16, it was the consignee who was held liable. In *Georgia R. R.* v. *Creety,* 5 Ga. App. 424, the shipper appears to have been also owner and consignee. In *Cleveland, C. C. & St. L. Ry. Co.* v. *Southern Coal & Coke Co.,* 147 Tenn. 433, 442, 452; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stannard & Co.,* 99 Kan. 720, 725; *Yazoo & M. V. R. Co.* v. *Picher Lead Co.,* 190 S. W. (Springfield, Mo., Ct. App.) 387; *Baltimore & Ohio Southwestern Ry. Co.* v. *New Albany Box and Basket Co.,* 48 Ind. App. 647; and *Wells Fargo & Co.* v. *Cuneo,* 241 Fed. 727, 729, it is erroneously assumed that the mere fact of delivery of goods for shipment imports, under the Interstate Commerce Act, as matter of law, an absolute promise to pay the freight charges, and/or that an agreement to the contrary is void.

coke to be received for transportation, the promise was not necessarily one to pay at any time any freight charges which the carrier might find it impossible to collect from the consignee or his assign. The court might have concluded that it guaranteed merely that the consignee or his assign would accept the shipment. For, under the rule of the *Fink Case*, if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act.

*Affirmed.*