**HOUSTON & T. C. R. CO. v. LEE COUNTY PRODUCE CO. et al.**

(District Court, S. D. Texas, at Houston. June 1, 1926.)

No. 424.

**1. Limitation of actions ⊗═21(4).**

Action for freight on carload shipments, not instituted for approximately three years, *held* barred by limitations.

**2. Carriers ⊗═194.**

Carrier, accepting shipment of eggs on which freight was to be paid by purchaser presenting assigned bill of lading, *held* not entitled, after permitting diversion of shipment by purchaser, and failure to collect freight of ultimate consignee, to recover freight of original shipper.

At Law. Action by the Houston & Texas Central Railroad Company against the Lee County Produce Company and others. Judgment for defendants.

Garrison & Watson, of Houston, Tex., for plaintiff.

L. D. Brown, Boyles, Brown & Scott, and Pat N. Fahey, all of Houston, Tex., for defendants.

HUTCHESON, District Judge. This is a suit to recover freight on shipments originating at various points in Texas; Lee

County Produce Company on the bills of lading being consignor and consignee.

It is admitted that no part of the freight has been paid, but it is claimed by the defendants that the freight is due, not by themselves, but by the Jones-Brewster Company, and/or the consignees in Cuba under the following facts:

The Lee County Produce Company at Giddings, in Lee county, Tex., on the several dates set out in plaintiff's petition in paragraphs 4, 5, 6, 7, 8, and 9, owned and delivered to plaintiff the six cars of eggs described in said paragraphs of said amended petition, and also owned and delivered to plaintiff at Carmine, Tex., the two cars of eggs described in paragraphs 10 and 11, and also owned and delivered to plaintiff at Caldwell, Tex., the one car of eggs described in paragraph 12 of said amended petition.

Lee County Produce Company had agreed to sell said eggs to Jones-Brewster Company, who was reselling the same for final delivery at Havana, Cuba. Lee County Produce Company, on the several dates named in said petition, delivered said carloads of eggs to plaintiff to be transported to Havana, Cuba. Plaintiff's agent at each of said points accepted said carloads of eggs for transportation over the lines and those of its connecting carriers to Havana, Cuba, and plaintiff's agents issued to the defendants shippers' order bills of lading from Lee County Produce Company, at the point of origin, consigned to Lee County Produce Company, Havana, Cuba, except three cars —car D. R. C. No. 31065, Texarkana, Tex.; car P. F. E. No. 6998 to Houston, Tex.; car No. L. C. 59419 to Memphis, Tenn.

The blank spaces in the provisions printed on the right-hand margin of the face of the bills of lading were as follows, and were left blank, except that the amount of charges advanced, as filled in, varied. Said blanks read as follows:

"If charges are to be prepaid, write or stamp here 'To be prepaid.'

"_____."

"Received $——— to apply on prepayment of the charges on the property described hereon.

"———, Agent or Cashier,
"Per———.

"(The signature here acknowledges only the amount prepaid.)

"_____
"(Charges advanced.)

"(Note.—The amounts filled in vary according to charges advanced.)"

Other than shown, the above blanks were not filled in in any manner.

At the time of these shipments, a general custom at all points, and a local custom at each of the points of shipment, existed and prevailed, whereby owners of commodities, such as eggs and other produce, sold their commodities at prices f. o. b. point of shipment, and the railroad company issued what is known as "collect" bills of lading, whereby the owner of the goods consigned the goods to himself, indorsed the bill of lading to the purchaser, collected the price for the commodity, and the railroad transported the commodity and collected the freight and accumulated charges for delivering the commodity to the holder upon surrender of the bill of lading, properly indorsed, or to reliable people, or to a consignee who has executed bond for freight and charges. This custom was known to both the carrier (plaintiff) and shipper (defendant), and was frequently followed by them.

The bills of lading, issued by the plaintiff and accepted by the Lee County Produce Company, contained section 8 as follows:

"Section 8. The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery. If, upon inspection, it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped." Conditions on back of bill of lading.

The tariff providing rules and regulations governing the transportation of freight to Havana, Cuba, in force at the time of these shipments, provided as follows:

"Prepayment of freight charges: All charges on freight to Havana, Cuba, and other Cuban points must be prepaid. The agent at Key West, Fla., will decline to receive shipments from connections unless this requirement is complied with."

It further contained the following provision:

"Bookings, rate quotations, or any information in connection with the handling of freight to Cuba through the port of Key West, Fla., can be obtained from F. W. Kirtland, freight traffic manager, St. Augustine, Fla.; C. J. Malay, general agent, 1847 Equitable Building, 120 Broadway, New York City, Edward Ottsen, general agent, 1512–14 Arcade Building, St. Louis, Mo., or R. L. Brannen, general agent, Muelle del Arsenal, Havana, Cuba." Freight Tariff No. 1012F.

The form of bill of lading in use under this tariff was the form of through bill of lading issued under agreement with the Liverpool Cotton Bills of Lading Conference (1907) Committee, and the American Bankers' Association, as shown by Exhibit B, attached to the agreement of facts.

The shipments came about in this way: One of the partners, who was the agent of the Lee County Produce Company, applied to the agent at Giddings for instructions as to how to ship the eggs, told the agent that the eggs were to be sold to Jones-Brewster Company who was to pay them for the eggs, f. o. b. cars at points of shipment, and that Jones-Brewster Company would sell the eggs to purchasers in Cuba. The agent instructed him to follow the custom of consigning the eggs to himself, freight and charges collect, transferring the bills of lading to Jones-Brewster Company, and letting them divert the shipments in accordance with their sales, and he followed the instructions.

While the cars were en route, Lee County Produce Company, pursuant to the agreement to sell the eggs to Jones-Brewster Company of Houston, Tex., transferred, assigned, and delivered to the Jones-Brewster Company the said bills of lading, and the said Jones-Brewster Company paid Lee County Produce Company for the eggs on the basis of their value f. o. b. points of origin.

After obtaining the bills of lading, and while several cars were en route, the Jones-Brewster Company presented the bills of lading, indorsed to them, to the plaintiff, with the request that the cars covered thereby be diverted and reconsigned to various dealers in Havana, Cuba, as alleged in defendants' answer.

Plaintiff went through the usual process of locating the cars and changing the names of the consignee on all required shipping papers and records of the plaintiff, and thereby accomplished said diversion and change of consignee, and indorsed the bills of lading to that effect, so as to show that the consignee had been changed at the request of Jones-Brewster Company, and returned the bills of lading to Jones-Brewster Company.

In making the reconsignment and diversion, the railroad company did not notify the defendants, nor ask nor obtain their consent thereto, because of the understanding had at the time of the shipment that the goods had been sold to Jones-Brewster Company and paid for by them, and that the Jones-Brewster Company were really the owners of the goods, and would be responsible for and pay the freight.

Thereafter plaintiff transported, and through connecting carriers delivered, said

cars to the water carrier; the cars were in turn transported to Havana, Cuba, and, at Havana, Cuba, the cars were delivered to the various Cuban purchasers to whom Jones-Brewster Company had sold them, and to whom they had been reconsigned in accordance with the above-mentioned diversion, as indorsed on the bills of lading. But said cars were by the connecting carriers delivered to the water carrier and were in turn delivered to the various Cuban purchasers, as shown by the indorsement of reconsignment, without collecting the freight and accrued charges from either Jones-Brewster Company or the various Cuban consignees.

Said freight charges and other charges have not been paid by the defendants, nor by the Jones-Brewster Company, nor by the purchasers in Cuba, to whom the shipments were reconsigned, to the plaintiff, nor any of the connecting carriers enroute to Havana, Cuba.

Upon receiving the cars en route, the Florida East Coast Railway Company, a connecting carrier, changed their billing upon discovering that the cars were billed out "collect" and marked them "prepaid," as all shipments destined to Cuban points were required by the tariff to be fully prepaid; the agent erroneously assuming that the requirements had been complied with.

Suit was not filed for charges on car I. C. No. 50419 until November 27, 1923, nor on car No. P. F. E. No. 3134 until July 17, 1923, nor upon car P. F. E. 6998 until November 15, 1923.

The shipments were delivered in the months of May, June, and July, 1920, but no claims were made against defendants for the freight, and the defendants were not notified of the unpaid freight until about one year later.

[1, 2] Upon these facts it is plain that the cause of action for three of the cars is barred by limitation, and, further, that as to all of the cars, notwithstanding the execution of the bills of lading by them, it was never contemplated that the defendants should be responsible for the freight, but it was understood that the real obligors would be the Jones-Brewster Company, and/or the Cuban consignees named in the bills of lading after the diversion was accomplished.

Upon such facts it would be contrary to both law and morals for the Lee County Produce Company to be held. David v. Akron Feed & Milling Co. (C. C. A.) 296 F. 675; L. & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900.

Had such a state of facts existed between any other parties than a railroad company and a shipper, the plaintiff would not even have attempted to sue, knowing that his action in making the original agreement to look to others for his pay, his action in releasing part of those others by an erroneous notation on a bill of lading, and in failing to collect from the remaining one until after he had gone into bankruptcy, would effectually prevent his maintaining his suit.

It cannot be reasonably contended that laws and regulations designed to prevent discrimination between shippers have developed a new series of contractual rights, or disturbed old concepts of wrong; these laws merely prevent railroads carrying freight for one on better terms than for another.

No such situation remotely arises here. A plain and legal understanding on the facts arose. The produce company was not to be liable upon the freight, but the Jones-Brewster Company would be. Upon this understanding, the Jones-Brewster Company was allowed to change the consignees of all the cars and the destinations of some of them. No payment was expected or was demanded of the produce company until it was discovered that the railroad could not collect from the persons whom in the beginning they had agreed to hold liable. Such a state of facts and such conditions cannot justly be made the basis of recovery.