(111 So. 196)

**T. S. FAULK & CO. v. CHICAGO, I. & L. RY. CO.    (4 Div. 156.)**

(Court of Appeals of Alabama.  Nov. 23, 1926. Rehearing Denied Dec. 14, 1926.)

1. **Commerce** ⬅8(14)—**Interstate Commerce Act and decisions of federal Supreme Court control consignor's liability for charges on interstate shipment (Interstate Commerce Act [U. S. Comp. St. § 8563 et seq.]).**

Where shipment is interstate, recourse must be had to Interstate Commerce Act (U. S. Comp. St. § 8563 et seq.), and the decisons of the federal Supreme Court construing it, in order to determine whether consignor is liable for transportation charges.

2. **Carriers** ⬅196—**Whether interstate shipment was delivered to railroad by defendant, sued for charges, or by consignee's agent, held for jury.**

In action by railroad to recover transportation charges on an interstate shipment, whether the shipment was delivered to the railroad by the defendant or by agent of the consignee *held* a question for the jury.

3. **Carriers** ⬅196—**Whether interstate bill of lading was properly made out and whether signature was authorized held for jury in carrier's action against consignor for charges.**

In action by railroad to recover transportation charges on an interstate shipment brought against defendant as consignor, whether bill of lading was properly made out and whether railroad agent was authorized to sign defendant's name to it *held* questions for the jury.

4. **Carriers** ⬅196—**Whether consignor of interstate shipment was merely agent for consignee held for jury in railroad's action for charges.**

In action by railroad to recover transportation charges on interstate shipment, whether

consignor had any interest in subject-matter of shipment and whether he was merely employed to load it and acted as agent of consignee *held* questions for the jury.

5. Carriers ⊜⧐196—Whether consignor and consignee of interstate shipment intended that consignor should not be liable held for jury in railroad's action for charges.

· In action by railroad to recover transportation charges on interstate shipment, whether consignor and consignee intended that consignor should not be liable for charges *held* a question for the jury.

6. Carriers ⊜⧐196—Whether railroad knew, if facts, that consignor of interstate shipment was consignee's agent and intended that consignor should not be liable for charges held for jury.

In action by delivering railroad to recover transportation charges on interstate shipment, whether receiving railroad knew, if facts, that consignor had no interest in subject-matter of shipment and acted as agent of consignee and intended that consignor should not be liable for the charges *held* questions for the jury.

7. Carriers ⊜⧐196—Finding that consignee only is responsible for charges is warranted if consignor merely loaded shipment, it was intended that consignor should not be liable, and receiving railroad knew facts.

In action by delivering railroad to recover transportation charges on interstate shipment, finding that railroad and consignor intended that consignee rather than consignor should be liable for transportation charges would be warranted if consignor had no interest in subject-matter of shipment, but was merely employed to load it, and acted as agent of the consignee, and it was intended that consignor should not be liable for charges and receiving railroad knew facts.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Action by the Chicago, Indianapolis & Louisville Railway Company against T. S. Faulk & Co. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Certiorari denied by Supreme Court in T. S. Faulk & Co. v. Chicago, Indianapolis & Louisville Railway Co., 111 So. 199.

Mulkey & Mulkey, of Geneva, for appellant.

Liability for payment of freight charges is to be determined by the law of the forum, from the contract itself and the course of dealings between the parties. L. & N. v. Central Iron & C. Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900. The consignee is presumably the owner of the goods and is therefore primarily liable for the freight. 2 Hutchinson on Carriers (3d Ed.) § 307 Where it appears that the goods were not owned by the consignor, and were not shipped on his account, for his benefit, the carrier is not entitled to call on the consignor for the freight.

4 R. C. L. 858. Where the carrier enters into a new contract with the consignee, as by the extension of time for payment of freight charges, it forfeits its right to resort to the consignor. 2 Hutchinson, § 810.

·Alfred Evens, of Chicago, Ill., and Carmichael & Tiller, of Geneva, for appellee.

The shipment in question moved in interstate commerce, and the federal law and decisions control. Amer. Ry. Ex. Co. v. Rhody (Ind. App.) 143 N. E. 640; Barrett v. New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483; Southern Ry. Co. v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836; Adams Ex. Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Interstate Commerce Act, §§ 1, 7. Maund having been authorized by appellant to execute the bill of lading, the relationship of principal and agent arose, and his act in signing such bill of lading was the act of appellant. Elliott on Railroads (3d Ed.) § 2265; Adams Ex. Co. v. Carnahan, 29 Ind. App. 606, 63 N. E. 245, 64 N. E. 647, 94 Am. St. Rep. 279; Hutchinson on Carriers (2d Ed.) § 265. Appellant, being the shipper of the goods involved, is liable for all freight charges which accrued on account of transportation thereof. Atlas S. S. Co. v. Colombian Land Co. (C. C. A.) 102 F. 358; Duncan v. United Steel Co. (D. C.) 244 F. 258; L. & N. v. Central I. & C. Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900; C. of G. v. Birmingham, 9 Ala. App. 419, 64 So. 202; 10 C. J. 445. The fact that the bill of landing provided that the consignee should pay the freight did not change or modify the liability of the shipper for freight charges. Duncan v. United States Steel Co., supra; Wells Fargo & Co. v. Cuneo (D. C.) 241 F. 727; L. & N. v. Central I. & C. Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900. The form of bill of lading promulgated by the Interstate Commerce Commission governs the rights of the parties when it is published in the tariffs. Lazarus v. N. Y. C. (D. C.) 271 F. 93; Erie v. Stone, 244 U. S. 332, 37 S. Ct. 633, 61 L. Ed. 1173.

BRICKEN, P. J. The evidence in this case tends to show that on June 27, 1922, T. S. Faulk & Co. delivered to the Louisville & Nashville Railroad Company, at Samson, Ala.. a carload of potatoes for transportation to M. Piowaty & Sons, of Chicago, Ill. The shipment moved in interstate commerce and was delivered to the appellee, Chicago, Indianapolis & Louisville Ry. Company, at Evansville, Ind., from which point it was transported by said company to Chicago and delivered to the consignee.

The evidence for the plaintiff tends to show that this shipment moved under a bill of lading which on its face contained the following provisions:

"If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. See section 7 of conditions."

Section 7, to which reference is thus made, is one of a number of "terms and conditions" printed on the back of the bill of lading, and is as follows:

"The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment the consignor shall not be liable for such charges."

When the shipment of potatoes reached Chicago, they were delivered to the consignee by the appellee, railroad company. The evidence tends to show that the consignee was on what was termed by a railroad witness as "our credit list," that is to say, under an existing arrangement between the transportation company and the consignee, shipments reaching Chicago consigned to this consignee were delivered to it by the railroad company without collecting its charges, and a bill or statement subsequently rendered the consignee by the railway company for charges on shipments delivered under this arrangement, which, according to the evidence, was usually promptly settled.

The evidence further tends to show that the consignee in this case presented a claim with and against the delivering carrier for the alleged loss and damage to the shipment of potatoes in question. The total transportation charges, amounting to something more than $200, have never been paid by the consignee, and, after demand made, the delivering carrier brings this suit against the consignor for said charges. The evidence tends to show that the potatoes in reality belonged to the consignee and that the consignee paid the consignor the expense of loading; that the potatoes were loaded at Samson under the instructions of the consignee; and that the railroad agent was directed to bill the car to the consignee, and that the bill of lading issued was sent direct to the consignee. The evidence further tends to show that the witness Maund was the agent of the Louisville & Nashville Railroad Company at Samson at the time of the shipment in question, and as such received freight for shipment and issued bills of lading, and that he handled the shipment in question and signed appellant's name to the bill of lading. In other words, in addition to being the railroad agent at that point, he acted as agent for the shipper to the extent of delivering the property to the carrier for shipment and signing the shipper's name at the appropriate place to the bill of lading. The evidence tends to show that he had handled shipments for the appellant in that way for some time previous to the shipment in question.

The court below gave the general affirmative charge for the plaintiff and refused a like charge requested by the defendant.

On behalf of the railroad company, it is insisted that the shipper, assuming that the appellant was the shipper in this case, did not sign the provision or statement on the face of the bill of lading above referred to, and therefore did not, and could not, relieve itself of its primary obligation to pay the accrued transportation charges on the shipment. On behalf of appellant, it is insisted that the evidence tended to show that appellant had no interest in the subject-matter of the shipment and was only employed to load the shipment and to that extent was an agent of the consignee; that appellant did not agree to pay the freight, but, to the contrary, it was agreed that the consignee should pay it; that the goods were delivered to the consignee and a bill of lading rendered the consignee for the freight, and upon the refusal to pay, because consignee had made a claim against the railroad company, the latter pursues the appellant in this case.

[1] The shipment being an interstate one, recourse must be had to the Interstate Commerce Act. (U. S. Comp. St. § 8563 et seq.) and the decisions of the federal court construing that act, in order to determine the rights of the parties.

[2-7] The latest declaration by the Supreme Court of the United States is to be found in Louisville & Nashville Railroad Co. v. Central Iron & Coal Company, 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900, where that distinguished tribunal, speaking through Mr. Justice Brandeis, said:

"To ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract. Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges, and his obligation is ordinarily a primary one. This is true, even where the bill of lading contains, as here, a provision imposing liability upon the consignee; for the shipper is presumably the consignor, the transportation ordered by him is presumably on his own behalf, and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. *It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability.*" (Italics ours.)

In the case at bar it is clear that T. S. Faulk was doing business under the name of T. S. Faulk & Co.; that T. S. Faulk himself did not sign the bill of lading, but that the same was signed by the railroad agent, Maund, whom it is claimed also acted as agent for ·Faulk. It is not clear whether or not the shipment in question was made at the instance of the appellant or at the instance of the consignee. It appears that the consignee had an agent in the vicinity where the shipment originated by the name of Holley. The witness Maund testified that he could not state whether or not the shipment in question was made by Holley or some one connected with· T. S. Faulk & Co., and in another instance the same witness testified, "In other instances where we shipped on the direction of this man Holley representing M. Piowaty & Son." When asked regarding his authority, for signing the name of T. S. Faulk & Co. to the bill of lading, his answer was:

. "Well, they most always, most people who ship a lot of freight, make out their own bill of lading, and, too, besides T. S. Faulk & Co. they come there and make out their own, and in making that bill of lading out hurriedly just signed T. S. Faulk & Co.'s name like most any one else would do, most everybody does, just assuming it would be all right."

As we understand the evidence in the case at bar, it was a question for the jury whether or not the shipment was delivered to the carrier in the first instance by the appellant or by Holley, representing the consignee; and it was likewise a question for the jury to decide whether or not the bill of lading was properly made out and whether or not the railroad agent was authorized to sign appellant's name to said instrument. We are likewise of the opinion that under the evidence it was a question for the jury as to whether or not the appellant had any interest in the subject-matter of the shipment, as also appellant's relation thereto. If the jury be satisfied from the evidence that the appellant had no interest in the subject-matter of the shipment, and that appellant's relation to the shipment was that appellant was employed to load it, and that the shipper was not acting on his own behalf but as agent for the consignee, and that the intention of the parties was that the consignor should not be obligated to pay any freight, and these facts were known by the receiving carrier, we apprehend that under the Central Iron & Coal Company Case above referred to, the jury might reach the conclusion that the parties intended that the consignee should assume the obligation to pay the transportation charges and that the shipper should not assume any liability therefor. These matters, under the evidence, were for the determination of the jury.

The court erred in giving the general affirmative charge requested by plaintiff·in the court below. For this reason the judgment appealed from is reversed and the cause is remanded.

Reversed and remanded.