## CALLAWAY et al. v. ATCHISON, T. & S. F. RY. CO.

Circuit Court of Appeals, Eighth Circuit. October 9, 1929.

No. 8240.

320

I. N. Watson, of Kansas City, Mo. (John B. Gage and Watson, Gage & Ess, all of Kansas City, Mo., on the brief), for appellant.

Cyrus Crane, of Kansas City, Mo., and Homer W. Davis, of Chicago, Ill., and George J. Mersereau, of Kansas City, Mo., for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. This action was brought by the Atchison, Topeka & Santa Fé Railway Company, the delivering carrier, against C. M. Callaway and W. L. Wayland, doing business as the Cassidy Southwest Commission Company, and Cassidy Southwest Commission Company, a corporation, to recover an alleged undercharge for carriage in the sum of $18.-70. The carriage in question consisted of cattle shipped by one M. V. Sutton, as consignor, on the 15th day of June, 1923, from Cotulla, in the state of Texas, to appellant herein, the latter being engaged in the commission business at the Kansas City Stockyards. The point of destination of the shipment was Kansas City, Mo. Upon arrival at the stockyards delivery was made to the consignee, and the sum of $135.50 was paid for the carriage. It was subsequently learned that the lawful freight charge under the tariff was $154.20. On March 11, 1924, and thereafter, this sum was demanded of the assignee. Payment was refused, and suit followed. Judgment below was for the carrier.

The commission company defends upon the ground that it is a market agency under the provisions of the Packers and Stockyards Act of 1921 (42 Stat. 159 [7 USCA § 181 et seq.]); that appellant, under said act, and appellee as a common carrier under the Transportation Act of 1920 (41 Stat. 456), are instrumentalities of equal rank of a public character in the current of interstate commerce; that both are subject to federal control of service, and to penalties for failure to adhere to filed tariffs respecting charges and service, and to federal laws prohibiting direct and indirect rebating. It is claimed, therefore, that appellant, as such registered market agency, can act lawfully only as an agent of the shipper, and cannot legally assume responsibility for obligations of the shipper of this nature.

It is urged, further, that both parties are trustees for the public, and that their obligations under their various acts are balanced by a public policy designed to secure uniformity in charges for selling service; that the mistake of the appellee in rendering an incorrect freight bill, with constructive knowledge that appellant, as agent for the consignor, would deduct, in remitting to the consignor, only the amount of such bill as a freight charge, when taken together with the subsequent insolvency of the shipper, as shown by the evidence, gives rise to an estoppel which bars recovery. The claim is that, if the appellant is compelled to pay this freight charge, it will result in a departure from its filed schedule of service rates, and will, in effect, operate as a rebate to the shipper, who, because of insolvency, is unable to reimburse the consignee. It is further contended that appellee, as a public instrumentality of equal rank, should not be permitted to exact such payment and thereby bring about such a violation of the provisions of the Packers and Stockyards Act.

In our opinion, this contention is without substance. "Under the Act to Regulate Commerce (49 USCA § 6) the duly filed tariff of the carrier must be charged by it and paid by the shipper or passenger without deviation therefrom. * * * Neither misquotation of rates nor ignorance is an excuse for charging or paying less or more than the filed rate." Louisville & Nashville R. Co. v. Maxwell, 237 U. S. 94, 35 S. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151. "A consignee, by accepting the shipment, becomes liable as a matter of law for the full amount of the tariff charges, whether they are demanded at the time of delivery or later." Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900; New York Central & Hudson River R. Co. v. York & Whitney Co., 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016.

It follows that if appellant were not a market agency it would scarcely be claimed that the judgment below should not be affirmed. We do not think its status, as a market agency, relieves it from the same obligation. If the contention of appellant

were to be indulged, the door would be opened to wholesale evasion of the Interstate Commerce Act and a great departure would result from the principle involved. The only hardship to appellant in the instant case results from the incidental insolvency of the consignor. Otherwise, the commission company could collect back this amount from the consignor, and no pretense could be made that this payment would constitute a rebate, or a departure from the provisions of the Packers and Stockyards Act, and the regulations governing the duties and obligations of a market agency. We cannot agree that a subsequent correction of the freight account between the shipper and his market agency, if warranted by the facts, as in this case, would result in a violation of the provisions of the Packers and Stockyards Act, and be viewed as a rebate. Such a correction in the case of a solvent shipper would occasion no refunding or remittance of any portion of the rates or charges specified as due to market agencies; that could result indirectly only in case of insolvency, but such a contingency would not excuse the market agent from the obligation imposed upon him, or it, by law.

The judgment below is affirmed.