This is an appeal from the ruling of the lower court sustaining a demurrer.
The petition is in three counts. Each presents substantially the same form of demand. It is alleged that plaintiff is a corporation, engaged in the operation of a railroad as a common carrier of freight for hire, and thru its connecting carriers was engaged in interstate commerce; that the defendant corporation is organized under the laws of the commonwealth of Massachusetts, and subsequent to the month of March, 1933, was engaged in completing the construction of a building in Des Moines commonly known as the Veterans Hospital; that in the course of the erection of said building defendant used certain building materials which were transported over the railroad of plaintiff and its connecting carriers from different parts of the United *Page 16 
States. The only basis for a claim is that the transportation contributed the amount of its value to the value of the materials, and that the defendant received the benefit thereof, and has failed to pay said sum, the retention of which is claimed to constitute unjust enrichment of the defendant at the expense of the plaintiff.
To this petition the defendant filed a demurrer, alleging that the petition failed to state a cause of action because the shipments, being interstate, are subject to the laws of the United States and under such laws all obligations to pay charges for transportation are based upon a contractual obligation incurred by the consignor, consignee, or the principal of either, and that the petition failed to state that the defendant occupied any such status. Further, the carrier has no right of property in the goods transported except a lien, which is waived by the extension of credit, and there is no claim made that credit for the freight involved was extended to the defendant.
The brief of the appellant does not cite a single case to support its contention. The only connection of the appellee with the materials shipped, stated in the petition, arises by reason of the allegation that the appellee used the materials in the construction of the building. The allegations of the petition of the appellant failed to disclose any facts which would create a contractual obligation on the part of the appellees to pay the transportation charges demanded, or that the lien was waived at its request.
The Supreme Court of the United States has universally held that the obligation to pay the shipping charges on an interstate shipment is a contractual obligation, and there must be a promise on the part of the party sought to be held for such charges, before liability will attach.
In the case of Louisville Nashville Railroad Company v. Central Iron Coal Co., 265 U.S. 59, at page 65, 44 S. Ct. 441,442, 68 L. Ed. 900, 902, that court said as follows:
"The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate to the actual weight. Thus, they were fixed by law. No contract of the carrier could reduce the amount legally payable, or release from liability a *Page 17 
shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor. Pittsburgh, C.C. St. L.R. Co. v. Fink, 250 U.S. 577,63 L. Ed. 1151, 40 Sup. Ct. Rep. 27; New York C. H.R.R. Co. v. York W. Co., 256 U.S. 406, 65 L. Ed. 1016, 41 Sup. Ct. Rep. 509. Compare St. Louis Southwestern R. Co. v. Spring River Stone Co.,236 U.S. 718, 59 L. Ed. 805, P.U.R. 1915C, 305, 35 Sup. Ct. Rep. 456. But delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act [49 U.S.C.A., § 1 et seq.], impose upon a shipper an absolute obligation to pay the freight charges. The tariff did not provide when or by whom the payment should be made. As to these matters carrier and shipper were left free to contract, subject to the rule which prohibits discrimination. The carrier was at liberty to require prepayment of freight charges, or to permit that payment to be deferred until the goods reached the end of the transportation. Wadley Southern R. Co. v. Georgia,235 U.S. 651, 656, 59 L. Ed. 405, 409, P.U.R. 1915A, 106,35 Sup. Ct. Rep. 214. Where payment is so deferred, the carrier may require that it be made before delivery of the goods; or concurrently with the delivery; or may permit it to be made later. Where the payment is deferred, the contract may provide that the shipper agrees absolutely to pay the charges; or it may provide merely that he shall pay if the consignee does not pay the charges demanded upon delivery of the goods. Or the carrier may accept the goods for shipment solely on account of the consignee; and, knowing that the shipper is acting merely as agent for the consignee, may contract that only the latter shall be liable for the freight charges. Or both the shipper and the consignee may be made liable. Nor does delivery of goods to a carrier necessarily import, under the general law, an absolute promise by the shipper to pay the freight charges. We must, therefore, determine what promise, if any, to pay freight charges, was, in fact, made by the Central Company."
In the case of Wallingford Bros. v. Bush, 255 F. 949, the Circuit Court of Appeals for this circuit held, at page 950:
"Such an obligation must be contractual. No express contract here involved carries such duty. There seems no reason *Page 18 
for the law to raise such by implication. It is common knowledge that some commodities, particularly grain, are sold several times while in transit. It would be startling and upsetting to dealers in such commodities to ascertain that a fleeting, temporary ownership of the grain in transit had cast upon each such owner a liability, which endured long after such ownership, to the railway to pay the freight charges. There is no counterbalancing consideration in favor of the railway. It need not take the shipment until it has received the freight charge. It need not deliver it until its charge is paid. If it chooses to rely upon credit, it is given that of the parties to the shipping contract, of the consignee to whom delivery is made, or of his assignee to whom delivery is made, and of the undisclosed principals (including owner) of any of the above. 10 C.J. 445 et seq., with notes. Thus the carrier is given every reasonable means of securing the payment of its charges. It certainly is not necessary to extend the field for the protection of the carrier. To do so would interfere with the present orderly business methods worked out by practical men and generally employed in a very large and important trade. In our judgment there is no basis for any implied contract based upon such transitory ownership."
From the cases above quoted it readily appears that the obligation to pay freight charges on an interstate shipment is a contractual one and the carrier may recover only from one who is a party to the shipping contract, either as consignor, consignee, or the principal for whom the consignor, or the consignee, acts as agent, or unless there was an express promise to pay transportation charges.
It necessarily follows that the petition failed to state a cause of action, and the trial court correctly sustained the demurrer. — Affirmed.
 Chief Justice and all Justices concur. *Page 19