**Robert E. BRIZENDINE, Trustee, on behalf of the Bankruptcy Estate of Brown Transport Truckload, Inc., Brown Transport Corp., Thurston Motor Lines, Inc., Plaintiff,**

v.

**MAINSTREET RETAIL STORES, INC., n/k/a Kohl's Department Stores, Inc., Defendant.**

Nos. 91–C–1160, 92–C–0031.

United States District Court, E.D. Wisconsin.

Feb. 12, 1993.

---

7. Kovatch did not file with its motion a "Statement of Material Facts," thus violating S.D.Ind.LR 56.1.

Paul R. Jaessing, Waukesha, WI, for plaintiff.

William P. Dineen, Milwaukee, WI, for defendant.

### DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court is the plaintiff's motion to strike the defendant's affirmative defenses and counterclaims.[1]

---

1. The plaintiff also filed a motion for summary judgment on May 8, 1992. However, a letter in the Court's file memorializes the plaintiff's intent to file proposed findings of fact and conclusions of law, in accordance with Local Rule 6.05, and the defendant's understanding that it would not

## I. *BACKGROUND*

This action is but one of the multitudes of "rates cases" filed by bankruptcy trustees in the wake of the financial demise of trucking companies. The Interstate Commerce Act, codified in Title 49 U.S.C. § 10101, et seq., imposes a sort of strict liability upon shippers that have failed to pay the carriers' full rates published in the Act. Under these regulations, a shipper is generally liable for underpayments regardless of whatever agreement was reached between the shipper and the carrier previously.

Brown Transport Truckload, Inc., Brown Transport Corporation, and Thurston Motor Lines, Inc. ("Brown") were carriers used by Mainstreet Retail Stores, Inc. ("Mainstreet") to ship clothes to department stores in Wisconsin. Brown filed for protection under Chapter 7 of the Bankruptcy Code, and the trustee of the bankruptcy estate is pursuing all of Brown's outstanding claims.

The Complaint alleges that Brown transported freight shipments on the defendants' behalf over a period of time. The rates charged to the defendants were less than the amount required by the Interstate Commerce Commission ("ICC"). Brown billed the defendants for the difference, but the defendants refused to pay. Its complaint prays for the difference between the amount paid by the shipper and the amount of the bills plus interest and the costs of this action.

Mainstreet has denied Brown's allegations and has filed affirmative defenses and a counterclaim, which are the subject of today's *Order.* The affirmative defenses are largely based upon various federal regulations dealing with common carriers. In addition, there is a statute of limitations defense and a Rule 12(b)(6) defense. Upon receiving Mainstreet's answer, affirmative defenses, and counterclaim, Brown filed this motion to strike all of the affirmative defenses and dismiss the counterclaim, arguing that each of them is meritless based upon the law governing common carriers' rate tariffs.

 Motions to strike are not favored and are granted only when it is clear that the

respond until theme documents had been filed. As of the date of this *Order,* the Court has not

pleadings are irrelevant to the litigation. *Hauer v. Bankers Trust New York Corp.,* 425 F.Supp. 796 (E.D.Wis.1977); Wright & Miller, *Federal Practice and Procedure,* 5A § 1380 (1990 ed.). However, the Seventh Circuit has acknowledged that while "a motion to strike a defense as insufficient is 'not favored' by the courts because of its potential as a dilatory tactic, it is nonetheless 'a useful and appropriate tool' for weighing the legal implications to be drawn from uncontroverted facts." *United States v. 416.18 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975) (citations omitted), quoting Wright & Miller, 5 § 1381 (1969 ed.). If there is a possibility that the nonmoving party may prevail on a defense after a full hearing on the merits, a court should allow him this opportunity and decline to strike the defense. *See* Wright & Miller, 5A § 1381 (1990 ed.).

 The plaintiff's arguments seem to reflect a belief that the filing of a claim is merely a formality to receiving the money that is allegedly owed to them by the defendant. However, as is the rule in nearly any type of civil proceeding, the plaintiff bears the burden of proof as to each element of his cause of action. *Carriers Traffic Service, Inc. v. Toastmaster, Inc.,* 707 F.Supp. 1498, 1505 (N.D.Ill.1988).

 The action alleged in the complaint is based upon provisions of the Interstate Commerce Act ("the Act"), as codified in 49 U.S.C. § 10101, *et seq.* Title 49 U.S.C. § 10762 imposes upon common carriers the duty of filing its tariff rates, rules and practices with the Interstate Commerce Commission ("ICC"). Section 10761 prohibits the carrier from charging or receiving a different amount for its services than has been filed with the ICC. The Seventh Circuit summarized the impact of § 10761 in *Western Transportation Co. v. Wilson and Co., Inc.,* 682 F.2d 1227 (1982):

> A common carrier regulated by the Interstate Commerce Commission may not receive a different compensation for its services from the rate specified in the applicable tariff, 49 U.S.C. § 19761(a), and if by

received these documents. Therefore, the motion for summary judgment cannot be addressed.

mistake it charges a lower rate it may sue under 28 U.S.C. § 1337 to recover the undercharge. E.g., *Madler v. Artoe*, 494 F.2d 323 (7th Cir.1974). The carrier's right to recover is quite unaffected by the usual limitations on contract actions based on mistake. "The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate ... [and] thus, they were fixed by law. No contract of the carrier could reduce the amount legally payable; or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor." *Louisville & Nashville R.R. v. Central Iron & Coal Co.*, 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924); see also *Fry Trucking Co. v. Shenandoah Quarry, Inc.*, 628 F.2d 1360, 1361 (D.C.Cir. 1980).

*Id.* at 1229. In effect, the Act serves to erase any "benefit of the bargain" struck by the carrier and the shipper through independent negotiation. The Supreme Court has held that an ICC policy which permitted the shipper and the carrier to enter into a contract specifying a rate lower than the published rate violated the Act. *Maislin Industries, U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

■ Although the Seventh Circuit remarked that this was a "harsh rule," it recognized that the Act does not impose *per se* liability on the shipper to pay if it has been undercharged. *Western Transportation Co.*, 682 F.2d at 1229. If the provisions of the tariff are not reasonable, the shipper may stay the lawsuit and petition the ICC to set aside the provisions. Similarly, if the language of the tariff is too ambiguous to allow a literal reading, a court may interpret it to determine what the parties actually intended. *Id.* at 1231. A shipper may also claim that the carrier never performed or that its financial obligations had already been met. Finally, if the services were provided under an inapplicable, higher rate, the shipper may raise that defense to the charges. *In re Penn Central Transportation Co.*, 477 F.2d 841 (3rd Cir.1973).

■ Brown has moved to strike all of the defendant's affirmative defenses and counterclaims for various reasons. First, Brown asserts that the defendant's counterclaim and all of the its affirmative defenses are barred by prior case decision based upon the filed rate doctrine. Without elaborating on the nature of the affirmative defenses and counterclaims, Brown claims that the filed rate doctrine demands that the defendant's defenses be stricken immediately. However, even in light of the harsh standards of the filed rate doctrine, it is clear that a shipper is not wholly without defenses. As the defendant has noted, there are several defenses available to undercharge claims, including claims that the rates were exempt from the I.C.C. filing requirements, the rates are unenforceable due to the carrier's failure to comply with ICC regulations, and that a different lower rate exists on file which is applicable to the shipment in question. *See Maislin*, 497 U.S. at 129, 110 S.Ct. at 2767. Because the defendant has not had an opportunity to review the documentation relevant to the shipments at question, it asks that the Court retain its defenses and counterclaim until its case can be developed.

■ Next, Brown contends that the defendant's contract carrier defense is not applicable to the instant case. Under the ICC regulations, contract carriers are exempt from the requirements governing common carriers. A common carrier provides transportation to the public for compensation, whereas a contract carrier operates under a continuing agreement with a party to provide transportation or a motor vehicle carrier for the exclusive use of that party for a period of time. 49 U.S.C. § 10102(14) and (15). Brown claims that the mere fact that it had a contractual agreement with the defendant should not cause the defendant to argue this defense.

However, the defendant points out that Brown was both a contract and a common carrier at the relevant times and that the

question pertaining to their relationship is an unresolved issue. The Court concurs. Although there are tests to determine whether a carrier is a contract carrier or a common carrier, it is too early to engage in this analysis. The defendant should have the opportunity to raise this defense if discovery proves it valid.

■ Similarly, the defendant's statute of limitations defense shall survive Brown's motion. Brown claims that its cause of action is not precluded by the statute of limitations, which is augmented by the extension provided by the Bankruptcy Act. In its support, it refers to Exhibit A of the Complaint, which lists the freight bills at issue by date. However, proof of the date of shipment may be given only by the bills of lading, which Brown has not provided. In the same vein, the defendant's counterclaim cannot be dismissed on a statute of limitations ground, since the dates of the shipments are not in the record for the purposes of this motion.

When keeping in mind the liberal pleading standards and the judiciary's distaste for motions to strike, the plaintiff's motion is premature. It is clear that defenses exist to the general cause of action, and there is no evidence showing that it would be impossible for the defendant to successfully argue these defenses. As for the defendant's counterclaim, it shall remain in the answer as well. The plaintiff has argued that it is barred by the statute of limitations, yet the only evidence of dates of delivery are listed on the freight bill. The freight bills are computer printouts listing money amounts and bill dates. There is nothing in the record which suggests that the bill dates and the delivery dates are one and the same. Therefore, the Court shall and hereby does DENY the plaintiff's motion to strike the defendant's affirmative defenses and motion to dismiss the counterclaim.

SO ORDERED.