No. 21,556.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee*, v. THE BOYLE COMMISSION COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. SHIPMENT OF POTATOES—*Commission Company Both Consignor and Consignee—Liable for Freight*. In an action by a railroad company against a commission company for the freight charges on a carload of potatoes consigned to the latter, the sole question in controversy being whether the defendant or the owner of the potatoes was the consignor, the defendant maintained that, while it had made the shipment, it did so as the agent of the owner of the potatoes, and not in its own behalf, but admitted that at the time they were being loaded into the car it advanced $60 to the owner on them. *Held*, that a finding was justified that the defendant was the consignor and was liable for the freight.

2. SAME. It is further held' that, even assuming that the defendant in making the shipment was acting solely as the agent of the owner, the evidence did not compel a finding that the plaintiff had knowledge of that fact.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed February 8, 1919. Affirmed.

*R. L. Holmes, Charles G. Yankey*, and *W. E. Holmes*, all of Wichita, for the appellant.

*William R. Smith, Owen J. Wood*, and *Alfred A. Scott*, all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Boyle Commission Company appeals from a judgment against it in favor of the Atchison, Topeka & Santa Fe Railway Company for the freight charges on a shipment of potatoes from Fort Gibson, Okla., to Colorado Springs, Colo., reconsigned to Denver. At Denver the consignee refused to receive the potatoes on account of their damaged condition. The railway company sold them for $30, leaving unpaid charges to the amount of $103.45.

The sole question involved here is whether there was any evidence to support a finding that the defendant was the consignor. The bill of lading was ambiguous, and oral evidence was admissible to show the real relations of the parties to the

shipping transaction. (10 C. J. 199.) The potatoes were grown by R. L. Bunch and were consigned to the defendant. The bill of lading, which was delivered to the defendant, recited their receipt by the railway company from Bunch, but was signed "Boyle Com. Co., Shipper, Per Kiddoo." The defendant claims that, with the knowledge of the railway company, it "merely acted as the agent of Bunch in getting the potatoes loaded on the car and shipped, whereupon the commission company was to sell the potatoes for the account of Bunch and account to him for the proceeds"—"that the appellant, in executing the bill of lading, acted merely as the agent for Bunch and not in its own behalf."

A stipulation covering certain agreed facts was filed, containing this statement, among others: "That said potatoes were grown by one R. L. Bunch on his farm at or near Fort Gibson, Oklahoma, and that the defendant advanced the said R. L. Bunch $60 on said potatoes at the time same were being loaded into the car." Oral testimony by the defendant tended to show that the sixty-dollar transaction referred to was a mere general loan of that amount by it to Bunch. But the admitted fact that the sum was advanced on the potatoes while they were being loaded into the car warrants an inference that it was loaned on that security, and that at the time of making the shipment the commission company held possession of the potatoes with a lien on them to the amount of $60, and was acting in its own behalf. If immediately after the money had been advanced, and before the potatoes had been accepted by the railway company, their shipment had been prevented or abandoned, the evidence and stipulation referred to would have warranted a finding that the defendant had the right to retain possession of them until its loan should be repaid.

2. Assuming that the commission company was in fact acting solely as the agent of Bunch in shipping the potatoes, the evidence would not compel the conclusion that the station agent who acted for the railway company in the transaction knew of that fact. The representative of the defendant gave this testimony concerning his talk with the station agent, apparently referring to the potatoes handled from Fort Gibson, rather than to this particular shipment:

"I explained to him that we were handling this Fort Gibson deal on the commission basis with percentage, what we were getting out of it

was a minimum guarantee. Also told him of various parties, quite a number of them, we had been lending money to dig the crops. I talked to him in general about the conditions of the deal."

He also testified that he had lent money to Bunch and to other farmers to enable them to market their crop—to dig the potatoes—and that the loan to Bunch was made "so that he could handle his output"; and to the question whether the $60 was advanced on this shipment of potatoes he answered: "Not on that particularly." We do not regard the evidence quoted as necessarily establishing knowledge on the part of the station agent that the commission company was not making the shipment in its own behalf, although it doubtless showed notice to him that Bunch was the owner of the potatoes, subject to the defendant's interest in them.

The judgment is affirmed.