**SOUTHERN PAC. CO. v. UNITED STATES.**

Civ. A. No. 1159.

United States District Court
D. Delaware.

Sept. 20, 1950.

Clarence A. Southerland, William Poole and James L. Latchum (of Southerland, Berl & Potter), all of Wilmington, Del., and Robert J. McLean, of New York City, for plaintiff.

William Marvel, U. S. Atty., and Francis A. Reardon, Asst. U. S. Atty., of Wilmington, Del., and Armistead B. Rood, Attorney, Department of Justice, of Washington, D. C., for defendant.

LEAHY, Chief Judge.

This is an action by plaintiff to recover freight charges in the amount of $3,203.72 with interest since November 1, 1946. The controversy concerns the transportation of 38 truck trailers, known as "Athey Wagons" which were transported from Mobase, Washington, to Oakland, California.[1] Originally the United States Army had these trailers at its Mount Rainier Ordnance Depot. The army decided the trailers were unserviceable and should be sold as surplus property. The trailers were sold under a contract of sale entered into by the purchasers which included the Standard Sales Conditions incorporated by the War Assets Administration into such contracts. These terms provided for sale f. o. b. cars common carrier, Mobase, Washington, and provided that all shipping expenses were to be paid by the purchaser, who was obligated to issue specific shipping instructions. Under the contract conditions title passed to the purchaser upon payment of the purchase price before the goods were loaded on the railroad cars for shipment.

In the case at bar, the War Assets Administration received shipping instructions that the trailers should be shipped to Oakland, California, via railroad freight. Neither Northern Pacific (original carrier) nor plaintiff had any actual knowledge of the transactions, the terms and conditions of the contract of sale, or the communications between any agent of defendant and the purchasers of the trailers. A Lt. Wilson, an agent of the War Assets Administration, delivered the trailers to Northern Pacific. Commercial bills of lading covering the shipment were issued by the railroad in the form known as Uniform Domestic Straight Bill of Lading. Plaintiff was the delivering carrier of these shipments. On arrival at Oakland, plaintiff tendered delivery of the trailers to the purchasers as consignee subject to payment for freight bill for transportation. The consignee refused to accept delivery of these shipments and refused to pay on the ground the amount of the freight claims was in excess of the applicable tariff rates. Plaintiff then gave notice to the shipper that consignee refused to accept delivery of the shipments and plaintiff thereupon requested instructions for the disposition of the shipments from the shipper. No instructions were received. The dispute was never resolved and the trailers were sold (for a second time) at auction in accordance with the terms of § 4 of the bill of lading contract. The sale realized $266.77, leaving a net deficit of $3,110.41 for transportation charges, plus federal transportation tax of 3% or $93.31.[2]

At the time of these shipments, army regulations[3] provided that transportation officers, such as Lt. Wilson, might ship government owned property on government bills of lading. But in the case at bar none of the parties requested it, and the property was not, in fact, shipped on government bills of lading. Pursuant to regulations, the government disposal agency was, however, named as the consignor. Thus, there was no notice to plaintiff that the government was not in fact the owner of the property.

The parties agree as to the applicable freight rate—i. e., that plaintiff's figure of $3,203.72 less the transportation tax of $93.31 is the correct one.

---

1. The facts as found in this memorandum are based on a stipulation of facts agreed to by the parties and offered at the hearing. Each party reserved the right to object to any of the facts on the ground of relevancy and materiality.

2. Admittedly, defendant is not liable for the transportation tax.

3. Army Regulations No. 55-5, No. 55-105, and 55-155.

On these facts, plaintiff contends defendant, as consignor, is liable for the transportation charges. Plaintiff urges there is nothing in this particular transaction which takes the case out of the general rule, though it concedes the case might have been taken out of the general rule if the goods had been shipped on a government bill of lading or if the terms of the bill of lading which was used had been different. Generally defendant denies the validity of plaintiff's arguments and consequently denies all liability.

■ I think plaintiff is entitled to a judgment. The trailers in suit, though they need not have been, were shipped on ordinary commercial bills of lading. It follows the ordinary shipping rules are applicable to them. The government when it selects the use of such a bill of lading stands—at least should stand—in the same position as any other shipper. This conclusion is enforced by the circumstance that the government may use, if it so desires, a special type bill of lading and, under such circumstances, receive special treatment. The government had it desired special treatment in the instant case could have inserted additional specific provisions in the bills of lading which would have relieved it of the liability it now faces, but this it failed to do.

■■ The consignor is primarily liable for freight charges and all other lawful charges except where the bill of lading provides otherwise. Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900. The reason for this rule is the consignor is the party for whom the service is performed.[4] To rebut this inference it must be shown by the bill of lading, or otherwise, that " * * * the shipper was not acting in his own behalf, that this fact was known to the carrier, and that the parties intended, not only that the consignee should assume an obligation to pay, but that the shipper should not assume any liability whatsoever, or that he should assume only a secondary liability."[5]

■ Clearly in this case defendant cannot rebut the inference of primary responsibility on it as shipper in so far as the admitted facts indicate. The carriers were not notified there was a contract of sale or of course any of the terms of such contract; and they had no knowledge that the government was acting merely as agent of the owners. In the absence of such knowledge or the reasonable basis to acquire such knowledge on the part of plaintiff, defendant must respond in damages. That the government or its agency may actually be sued for damages in a situation such as this is not explicitly decided by any of the cases. It is, however, implicitly decided in Atchison, T. & S. F. Ry. Co. v. United States, 256 U.S. 205, 41 S.Ct. 456, 457, 65 L.Ed. 891, because in that case the court said that "By requesting and accepting the service without some special arrangement for a different rate the United States assented to and became obligated to pay that rate." The opinion as I read it of necessity means that if the United States refused to pay the regular rate it must respond in damages. This equity in favor of plaintiff should be rewarded, especially because there is no correlative hardship on defendant. Defendant, for example, could have avoided the result of this decision (and plaintiff would not thereby have been misled) in the following ways: (1) Since the War Assets Administration was given broad powers over the terms of the sale, it could have provided that the goods should be shipped on government bills of lading; (2) that title should pass at origin or at destination as a specific term in the bill of lading; (3) that shipping charges should be collected from a des-

---

4. The following opinions are among the many cases announcing this rule. Atchison T. & S. F. Ry. Co. v. Boyle, 104 Kan. 166, 178 P. 614; New York Central R. Co. v. Singer Mfg. Co., 131 A. 111, 3 N.J.Misc. 1137; Director General of Railroads v. Birdsboro Stone Co., 86 Pa.Super. 587; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900.

5. New York Central R. Co. v. Buck, 2 Cal.2d 384, 41 P.2d 547, 549.

ignated person; (4) that the government should not be responsible for shipping charges, etc.

 Judgment should be entered for plaintiff for the transportation charges in suit. However, I shall, at this time, deny plaintiff's claim to interest because generally interest is not allowable on claims against the government unless it has so stipulated to pay it, has agreed by contract, or the right is given by statute. See National Bulk Carriers v. United States, D.C. Del., 73 F.Supp. 622. If plaintiff thinks it is entitled to interest, I shall entertain further argument on the point. If not, let an appropriate order for a judgment for plaintiff be submitted.